**Israel G. ROMERO, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 06–03–00072–CR.**

Court of Appeals of Texas, Texarkana.

Submitted March 11, 2004.

Decided April 27, 2004.

Rehearing Overruled May 18, 2004.

Ken J. McLean, Houston, for appellant.

William Delmore, III, Chief Prosecutor, Donald W. Rogers, Jr., Assistant District Attorney, Houston, for appellee.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Chief Justice MORRISS.

When subpoenaed State's witness, Cesar Hiran Vasquez, appeared at Israel G. Romero's aggravated assault trial wearing dark sunglasses, a baseball cap pulled low over his eyes, and a jacket with an upturned collar, leaving visible only Vasquez's ears, the tops of his cheeks, and the bridge of his nose, the trial court, over defense counsel's objection, allowed Vasquez to testify in the "disguise." We must decide whether that violated Romero's rights under the Confrontation and Due Process Clauses. We hold it did.

Romero was indicted for aggravated assault after a May 2002 shooting incident outside a Harris County nightclub. On the first day of trial, it became clear one of the State's witnesses, Vasquez, was reluctant to testify. Although Vasquez was in the building, he simply refused to enter the courtroom even after the trial court ordered him to pay a $500.00 fine for refusing to comply with the State's subpoena. Vasquez finally entered the courtroom—sometime between one and a half to three hours after arriving at the courthouse—only after the State agreed he could testify in his disguise.

When Vasquez entered dressed in his disguise, and while still outside the presence of the jury, Romero's counsel objected to Vasquez's appearance, arguing he should not be permitted to testify in disguise on the grounds that it would be highly prejudicial and a violation of Romero's constitutionally protected rights. Although Vasquez stated he was afraid to testify against Romero because he had witnessed how dangerous Romero could be and feared Romero would seek revenge, he admitted he had neither seen Romero since the incident nor been threatened by Romero in any way. Nevertheless, citing his own safety, Vasquez maintained he would not testify in front of Romero without being able to wear his disguise.

After hearing both Romero's and the State's arguments on the issue, and without further commenting on its ruling, the trial court simply stated it would allow Vasquez to testify as he was. At the close of the evidence, including Vasquez's eyewitness testimony, the jury found Romero guilty of aggravated assault and assessed punishment at ten years' confinement. Romero now appeals, contending the trial court erred by (1) allowing Vasquez to testify in disguise, violating Romero's rights to confront one of the State's witnesses and to be presumed innocent, and (2) admitting evidence of an unadjudicated extraneous offense during the punishment phase of the trial. *Right to Confrontation*

■ Applicable to the states through the Due Process Clause, *Pointer v. Texas*, 380 U.S. 400, 403–06, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965), the Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him," U.S. CONST. amend. VI. Normally, the right to confront one's accuser is satisfied if defense counsel is given wide latitude to question an adverse witness; but the Confrontation Clause provides a criminal defendant not only the right to cross-examination, but also the right to physically face those who testify against him. *Pennsylvania v. Ritchie*, 480 U.S. 39, 51–53, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987). Romero contends the latter right was violated.

Addressing a similar issue in *Coy v. Iowa*, 487 U.S. 1012, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988), the United States Supreme Court reversed and remanded a

decision allowing two child witnesses to testify behind a large screen separating them from the defendant accused of sexually abusing them. Noting there has never been any doubt "the Confrontation Clause guarantees the defendant a face-to-face meeting with witnesses appearing before the trier of fact," the Court pointed out "there is something deep in human nature that regards face-to-face confrontation between accused and accuser as 'essential to a fair trial in a criminal prosecution.'" *Id.* at 1016–17, 108 S.Ct. 2798 (quoting *Pointer,* 380 U.S. at 404, 85 S.Ct. 1065). Considering that this concept "traces back to the beginnings of Western legal culture," the Court found it interesting that the phrase "Look me in the eye and say that" still persists and bears considerable significance. *Id.* at 1015, 1018, 108 S.Ct. 2798. With this understanding, "the right of confrontation 'contributes to the establishment of a system of criminal justice in which the perception as well as the reality of fairness prevails.'" *Id.* at 1018–19, 108 S.Ct. 2798 (quoting *Lee v. Illinois,* 476 U.S. 530, 540, 106 S.Ct. 2056, 90 L.Ed.2d 514 (1986)).

Unlike the present case in which a witness concealed his face from the defendant, judge, and jury, the screen employed in *Coy* was designed to enable the defendant to dimly perceive the complaining witnesses, at the same time lessening the witnesses' unease by blocking the defendant from their view. *Id.* at 1014–15, 1020, 108 S.Ct. 2798. Under those circumstances, the Court stated: "It is difficult to imagine a more obvious or damaging violation of the defendant's right to a face-to-face encounter." *Id.* at 1020, 108 S.Ct. 2798. The violation in this case is worse than in *Coy* because Vasquez's disguise was aimed at blocking not his view of Romero, but Romero's view of him.

The Confrontation Clause does not, of course, compel the witness to fix his eyes upon the defendant; he may studiously look elsewhere, but the trier of fact will draw its own conclusions. Thus the right to face-to-face confrontation serves much the same purpose as a less explicit component of the Confrontation Clause that we have had more frequent occasion to discuss—the right to cross-examine the accuser; both "ensur[e] the integrity of the factfinding process."

*Id.* at 1019–20, 108 S.Ct. 2798 (quoting *Kentucky v. Stincer,* 482 U.S. 730, 736, 107 S.Ct. 2658, 96 L.Ed.2d 631 (1987)). While the *Coy* Court conceded that "rights conferred by the Confrontation Clause are not absolute, and may give way to other important interests," it declined to identify any such exception because there were no individualized trial court findings that the witnesses in that case needed special protection. *Id.* at 1020–21, 108 S.Ct. 2798. In *Maryland v. Craig,* 497 U.S. 836, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990), the Supreme Court was once again asked to address a defendant's right to confront adverse witnesses face to face. This time, however, in light of the trial court's individualized findings that the child witness involved needed special protection, the Court was required to decide the question reserved in *Coy. Id.* at 845, 110 S.Ct. 3157. Specifically, the Court had to determine whether the Confrontation Clause "categorically prohibits a child witness in a child abuse case from testifying against a defendant at trial, outside the defendant's physical presence, by one-way closed circuit television." *Id.* at 840, 110 S.Ct. 3157.

█ Citing its earliest case interpreting the Confrontation Clause, the Court in *Craig* stated the clause's primary purpose was to prevent depositions or ex parte affidavits from being used against a defendant in lieu of testimony subject to cross-examination. Cross-examination in the physical presence of the accused allows the

accused not only to test the recollection and sift the conscience of the witness, but also to compel him or her "to stand face to face with the jury in order that [its members] may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief." *Id.* at 845, 110 S.Ct. 3157 (quoting *Mattox v. United States,* 156 U.S. 237, 242–43, 15 S.Ct. 337, 39 L.Ed. 409 (1895)). The Confrontation Clause, therefore,

> (1) insures that the witness will give his statements under oath—thus impressing him with the seriousness of the matter and guarding against the lie by the possibility of a penalty for perjury; (2) forces the witness to submit to cross-examination . . .; [and]
>
> (3) *permits the jury that is to decide the defendant's fate to observe the demeanor of the witness in making his statement, thus aiding the jury in assessing his credibility.*[1]

*Id.* at 845–46, 110 S.Ct. 3157 (quoting *California v. Green,* 399 U.S. 149, 158, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970)) (emphasis added).

▉ Reiterating the position taken in *Coy,* the Court explained that a defendant's right to face-to-face confrontation is not absolute. *Id.* at 849–50, 110 S.Ct. 3157. Nevertheless, the requirement may not easily be dispensed with because "a defendant's right to confront accusatory witnesses may be satisfied absent a physi-cal, face-to-face confrontation at trial only where denial of such confrontation is necessary to further an important public policy and only where the reliability of the testimony is otherwise assured." *Id.* Ultimately, the facts presented in *Craig* indicated that all of the other elements of the right to confrontation were met because the Maryland statute permitting testimony via one-way closed circuit television also (1) required child witnesses to be competent to testify, doing so under oath; (2) allowed the defendant the opportunity for contemporaneous cross-examination; and (3) enabled the judge, jury, and defendant to view the demeanor (and body) of the testifying witness. *Id.* at 851, 110 S.Ct. 3157.

Even with these assurances, however, weighing the State's transcendent interest in protecting the physical and emotional welfare of children against the Confrontation Clause's "preference" for face-to-face confrontation is not enough. *See id.* at 849–50, 110 S.Ct. 3157; *Coy,* 487 U.S. at 1024–25, 108 S.Ct. 2798 (O'Connor, J., concurring). In fact, although the Court upheld the Maryland statute at issue in *Craig,* it did so because the State made an adequate showing, and the trial court made a case-specific finding, of necessity, evidencing the trauma that would be caused by compelling the particular child witness in that case to confront her alleged abuser.[2] *Craig,* 497 U.S. at 855, 110 S.Ct. 3157.

---

**1.** After explaining the need for confrontation and laying out the reasons it enhances the accuracy of the fact-finding process, the *Mattox* Court went on to state:

> There is doubtless reason for saying that the accused should never lose the benefit of any of these safeguards even by the death of the witness. . . . But general rules of law of this kind, however beneficent in their operation and valuable to the accused, must occasion-ally give way to considerations of public policy and the necessities of the case.

*Mattox v. United States,* 156 U.S. 237, 243, 15 S.Ct. 337, 39 L.Ed. 409 (1895); *see Maryland v. Craig,* 497 U.S. 836, 848, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990).

**2.** Elaborating on this point, the Court explained:

> The requisite finding of necessity must of course be a case-specific one: The trial

■ A number of dissimilarities between *Craig* and the present case demonstrate the violation of Romero's constitutional right to confront, face to face, one of the witnesses against him. First, the procedure discussed in *Craig*, which was designed to lessen the witness' trauma from testifying in the physical presence of the defendant, still enabled the judge, jury, and defendant to view the demeanor of the witness as she testified. *Id.* at 851, 110 S.Ct. 3157. "[M]indful of the many subtle effects face-to-face confrontation may have on an adversary criminal proceeding," *id.*, we note that, although Vasquez's disguise did not remove him from the physical presence of the defendant, neither the defendant nor the trier of fact was fully able to "look at him, and judge by his demeanor upon the stand and the manner in which he [gave] his testimony whether he [was] worthy of belief," *Mattox*, 156 U.S. at 243, 15 S.Ct. 337. Second, the State's interest in protecting child witnesses from the trauma of testifying in a child abuse case was held to be "sufficiently important to justify the use of a special procedure that permits a child witness in such cases to testify ... in the absence of face-to-face confrontation with the defendant." *Craig*, 497 U.S. at 855, 110 S.Ct. 3157. In the present case, the State failed to identify any such interest, and Vasquez is an adult. Third, even if the State had identified an interest sufficiently important to justify

abridging Romero's right to confront Vasquez, unlike the situation in *Craig*, the trial court failed to make any case-specific findings of necessity. *See id.* at 855–58, 110 S.Ct. 3157. Considering the facts of this case, Romero's right to confrontation was unjustifiably violated, absent a finding of necessity, when Vasquez testified in disguise.

We note only one other case that has addressed a similar issue. In *People v. Morales*, 246 A.D.2d 302, 666 N.Y.S.2d 410, 411 (1998) [hereinafter *Morales I*] (emphasis added), New York's Appellate Division, First Department, determined that a defendant "was not denied his right of confrontation ... when a witness for the prosecution was permitted to testify while wearing sunglasses, at her insistence, for purposes of disguise .... [because] *the procedure was justified by the necessities of the case.*" When the New York Court of Appeals denied leave to appeal, *People v. Morales*, 91 N.Y.2d 975, 672 N.Y.S.2d 855, 695 N.E.2d 724 (1998), the defendant thereafter filed a habeas corpus petition in federal district court, which was ultimately denied (and affirmed on appeal) because the Confrontation Clause claim was insufficient to provide a basis for habeas relief. *Morales v. Artuz*, No. 98 Civ. 6558, 2000 WL 1693563, 2000 U.S. Dist. LEXIS 16405 (S.D.N.Y.2000) [hereinafter *Morales II* ], aff'd, 281 F.3d 55 (2d Cir.2002) [hereinaf-

court must hear evidence and determine whether use of the one-way closed circuit television procedure is necessary to protect the welfare of the particular child witness who seeks to testify. The trial court must also find that the child witness would be traumatized, not by the courtroom generally, but by the presence of the defendant. Denial of face-to-face confrontation is not needed to further the state interest in protecting the child witness from trauma unless it is the presence of the defendant that causes the trauma. In other words, if the state interest were merely the interest in

protecting child witnesses from courtroom trauma generally, denial of face-to-face confrontation would be unnecessary because the child could be permitted to testify in less intimidating surroundings, albeit with the defendant present. Finally, the trial court must find that the emotional distress suffered by the child witness in the presence of the defendant is more than ... "mere nervousness or excitement or some reluctance to testify."

*Craig*, 497 U.S. at 855–56, 110 S.Ct. 3157 (quoting *Wildermuth v. State*, 310 Md. 496, 530 A.2d 275, 289 (1987)) (citations omitted).

ter *Morales III* ], *cert. denied, Morales v. Greiner*, 537 U.S. 836, 123 S.Ct. 152, 154 L.Ed.2d 56 (2002).[3]

These courts reached their decisions, at least in part, after determining the trial court properly concluded the witness' disguise was justified by the necessities of the case. *Morales I*, 666 N.Y.S.2d at 411; *Morales II*, 2000 WL 1693563, at *3–4, 2000 U.S. Dist. LEXIS 16405, at *12–14; *Morales III*, 281 F.3d at 57–58. In *Morales I*,

> [t]he trial judge found, after hearing the witness's explanation and observing her demeanor and after extensive discussion with counsel, that [she] had a real and justified fear of testifying. The court noted that it was apparent [the witness] would not testify without the sunglasses and that she was prepared to defy the court's order. The court found that she was terrified of the defendant. In order to obtain what the trial judge viewed as testimony "extremely relevant and material to the guilt or innocence of the defendant," he determined that it was

"necessary" to allow her to testify with the sunglasses. Moreover, permitting [the witness] to wear sunglasses while testifying is a relatively modest imposition on the right to face-to-face confrontation that the trial court properly found was justified by the necessities of the case. Thus, the trial court identified the correct legal rule and determined that [the witness] could wear her sunglasses. This finding was not "contrary to" or an objectively unreasonable application of *Coy* and *Craig's* Confrontation Clause doctrine.

*Morales II*, 2000 WL 1693563, at *3–4, 2000 U.S. Dist. LEXIS 16405, at *12–13 (explaining the balancing of interests in *Morales I* ) (citations omitted). In the present case, however, no such finding of necessity was made. The record, in fact, reveals two instances where the trial court mentioned the issue, but contains neither an explanation for overruling Romero's objections nor a finding to support that ruling.[4] There appears in the record no bal-

**3.** While their analyses are instructive, we note that the decisions in *Morales II* and *Morales III* were necessarily governed by the standard for reviewing state court determinations in federal habeas corpus proceedings. *Morales II*, 2000 WL 1693563, at *3–4, 2000 U.S. Dist. LEXIS 16405, at *8–10 (S.D.N.Y.2000); *Morales III*, 281 F.3d 55, 58–59 (2d Cir.2002). That is, a federal court may not grant a petition for habeas corpus unless the adjudication of the claim in state court "resulted in a decision that was contrary to, or involved an unreasonable application of, *clearly established* Federal law ... or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C.A. § 2254(d) (West Supp.2003) (emphasis added). Employing this standard, the courts' decision to deny relief was based on the determination that the *Coy–Craig* analysis cannot be considered clearly established law under the circumstances and that it was not, therefore, an unreasonable application of Supreme Court precedent for the state court to

allow the witness to testify as she did, given the finding that her fear was justifiable and it was necessary to allow her to wear the sunglasses in order to obtain her testimony. *Morales II*, 2000 WL 1693563, at *3–4, 2000 U.S. Dist. LEXIS 16405, at *11–14; *Morales III*, 281 F.3d at 58–59.

**4.** After the parties requested a ruling on whether Vasquez would be permitted to testify wearing his disguise, for example, the following exchange took place:

> THE COURT: ... [I]f you were not allowed to dress the way you are now and the defendant [was] present in the courtroom, would you still testify?
> [VASQUEZ]: Maybe. I don't know.
> THE COURT: Well, I want to know. Yes or no?
> [VASQUEZ]: For my safety, I wouldn't do it.
> [DEFENSE COUNSEL]: Your Honor, because of the surrounding circumstances regarding this witness, Cesar Hiran, and his desire not to testify, I was here earlier.

ancing of the State's interest in obtaining evidence "extremely relevant and material to the guilt or innocence of the defendant" against the "imposition on the right to face-to-face confrontation," as did the New York courts, *Morales II*, 2000 WL 1693563, at *3, 2000 U.S. Dist. LEXIS 16405, at *12–13. We find only the trial court's statement, "I'm going to allow the witness to testify in shades, a ball cap, and with his collar turned up."

In a situation more similar to the one presented in *Craig*, the Texas Court of Criminal Appeals reiterated that "a defendant's right to confront accusatory witnesses may be satisfied absent a physical, face-to-face confrontation at trial *only* when denial of such confrontation is necessary to further an important public policy and the reliability of the testimony is otherwise assured." *Marx v. State*, 987 S.W.2d 577, 580 (Tex.Crim.App.1999) (citing *Craig*, 497 U.S. at 850–51, 110 S.Ct.

3157). There, the trial court's decision to allow two child witnesses to testify via two-way closed circuit television avoided violating the Confrontation Clause because the court explicitly found, as a matter of fact, that the special procedure was necessary to protect the children from the emotional trauma of having to testify in the defendant's physical presence. *Id.* The court went on to state that "the requisite reliability of the children's testimony was assured because they testified after promising to do so truthfully, they were subject to cross-examination, *and the jury was able to observe their demeanor.*" *Id.* at 581 (emphasis added).

■ Even if the trial court had made a case-specific finding of necessity, we doubt that, under the circumstances, allowing an adult witness to substantially conceal his or her face while testifying in a criminal

We've been here for three hours. The pressure placed on him by the government, the government telling him that he could testify if he was disguised, I think that is, in my personal opinion, is reprehensible. I think it deprives my [client's] right to a fair trial to confront his accuser. As such, I think this witness should not be allowed to testify under any circumstances.

THE COURT: Your request is denied.

[DEFENSE COUNSEL]: And is the Court going to allow him to dress this way in front of the jury?

THE COURT: Yes, I am.

[DEFENSE COUNSEL]: Excuse me?

THE COURT: I am.

Later in the same hearing, the parties attempted to objectify Vasquez's fear of testifying in Romero's presence before briefly presenting arguments on the confrontation issue.

[THE STATE]: Why are you afraid to testify against this defendant?

[VASQUEZ]: Because of the way that it could be seen that he was going to attack the security guard. It can be seen that he's a person who's dangerous on the street.

[THE STATE]: And does it worry you or concern you if he was able to see your face?

[VASQUEZ]: Yes.

[THE STATE]: What are you afraid that he would do?

[VASQUEZ]: To take revenge.

. . . .

[DEFENSE COUNSEL]: Well, my client's never threatened you has he?

[VASQUEZ]: No.

[DEFENSE COUNSEL]: All right. He's given you no reason to be afraid of him, right?

[VASQUEZ]: Didn't you see the way he's looking at me?

[DEFENSE COUNSEL]: In court here? In other words, you're just scared of the way he's looking at you, right?

[VASQUEZ]: No.

[DEFENSE COUNSEL]: He's never threatened you, right?

[VASQUEZ]: No.

[DEFENSE COUNSEL]: He's never sought revenge on you, correct?

[VASQUEZ]: No.

[DEFENSE COUNSEL]: You're just afraid, right?

[VASQUEZ]: For my safety.

[DEFENSE COUNSEL]: It's just in your mind, isn't it?

[VASQUEZ]: You can take it however you want.

trial would pass constitutional muster. The three assurances of reliability mentioned in the preceding paragraph's discussion of *Marx* are the same constitutional guarantees identified in *Mattox* and *Green* and re-emphasized in *Craig*. That is, in addition to ensuring that a witness gives his or her statements under oath and requiring the witness to submit to cross-examination, the Confrontation Clause also ensures that the trier of fact will be permitted to observe the witness' demeanor, aiding in the assessment of his or her credibility. *Craig*, 497 U.S. at 845–46, 110 S.Ct. 3157; *Green*, 399 U.S. at 158, 90 S.Ct. 1930; *Mattox*, 156 U.S. at 242–43, 15 S.Ct. 337.

While the validity of demeanor evidence in assessing witness credibility has been questioned, *see, e.g., Morales III*, 281 F.3d at 61 nn. 3–4, it is clear that such evidence is deeply rooted in our legal culture and tradition, and the Supreme Court's opinions relating to this matter provide no indication that a break with precedent is forthcoming. *Craig*, 497 U.S. at 844, 110 S.Ct. 3157; *Coy*, 487 U.S. at 1015–20, 108 S.Ct. 2798. In fact, tracing the origins of the right of confrontation to Roman law, *Coy*, 487 U.S. at 1015–16, 108 S.Ct. 2798 the Court has repeatedly emphasized that "the irreducible literal meaning of the [Confrontation] Clause ... [is] 'a right to *meet face to face* all those who appear and give evidence *at trial*,'" *id.* at 1021, 108 S.Ct. 2798 (quoting *Green*, 399 U.S. at 175, 90 S.Ct. 1930 (Harlan, J., concurring)), and that "it is this literal right to 'confront' the witness at the time of trial that forms the core of the values furthered by the Confrontation Clause." *Green*, 399 U.S. at 157, 90 S.Ct. 1930. It is interesting to note, therefore, that the Second Circuit Court of Appeals downplayed the guarantee of a generalized right to face-to-face confrontation, expressing its doubts that permitting a witness to testify in a crimi-nal trial while wearing dark sunglasses is contrary to constitutional law. *Morales III*, 281 F.3d at 62. The court explained:

> The obscured view of the witness's eyes ... resulted in only a minimal impairment of the jurors' opportunity to assess her credibility. Even if we accept the idea, grounded perhaps more on tradition than on empirical data, that demeanor is a useful basis for assessing credibility, the jurors had an entirely unimpaired opportunity to assess the delivery of [the witness's] testimony, notice any evident nervousness, and observe her body language. Most important, they had a full opportunity to combine these fully observable aspects of demeanor with their consideration of the substance of her testimony, assessing her opportunity to observe, the consistency of her account, any hostile motive, and all the other traditional bases for evaluating testimony. All that was lacking was the jury's ability to discern whatever might have been indicated by the movement of her eyes.

*Id.* at 60–62 (citations omitted).

Despite the court's claim that the jury had "an entirely unimpaired" opportunity to assess the witness' demeanor apart from "whatever might have been indicated by the movement of her eyes," it acknowledged that this, at least, resulted in "a minimal impairment" of the jury's opportunity to assess the witness' credibility. *Id.* The court itself cited a number of cases in which seeing a witness' eyes has been explicitly mentioned as being of value in assessing credibility, and even noted other cases in which "[s]eeing a person's eyes has ... been deemed of value in contexts other than on the witness stand." *Id.* at 60 & n. 2. Nevertheless, the Second Circuit apparently concluded that any impairment in the ability to assess the witness' demeanor due to her dark sunglasses was

outweighed by other factors available for the jury's consideration. *Id.* at 61–62.

Such a balancing test between the various elements of a witness' demeanor and his or her actual testimony to determine which of the elements may be dispensable, however, appears unwarranted under *Coy* and *Craig*. Similar to the defendant in *Morales III*, for example, the defendant in *Coy* was still given the opportunity to assess the delivery of testimony, notice any evident nervousness, observe body language (albeit "dimly"), and to combine these aspects of demeanor with the substance of the testimony itself, yet the Supreme Court determined that the use of a one-way screen separating the witness from the defendant clearly violated that defendant's right to a face-to-face encounter. *Coy*, 487 U.S. at 1020, 108 S.Ct. 2798. We have no doubt that testifying in a defendant's physical presence may "upset the truthful rape victim or abused child," but so testifying "may also confound and undo the false accuser, or reveal the child coached by a malevolent adult." *Id.* In the same vein, we recognize that a witness may feel, justifiably, intimidated or frightened by the prospect of facing a criminal defendant accused of a violent crime, but we note also "that constitutional protections have costs." *Id.* "In this country, if someone dislikes you, or accuses you, he must come up in front. He cannot hide behind the shadow." *Id.* at 1018, 108 S.Ct. 2798 (quoting President Eisenhower, Address to the B'nai B'rith Anti–Defamation League (Nov. 23, 1953), *quoted in* Pollitt, *The Right of Confrontation: Its History and Modern Dress*, 8 J. Pub.L. 381, 381 (1959)).

We hold Romero's right of confrontation was improperly infringed.

*Presumption of Innocence*

■ We also hold his presumption of innocence was unduly compromised. The guarantee of due process under the Fourteenth Amendment includes the right to a fair trial, and basic to this right is the presumption of a defendant's innocence. *Marx*, 987 S.W.2d at 581 (citing *Holbrook v. Flynn*, 475 U.S. 560, 106 S.Ct. 1340, 89 L.Ed.2d 525 (1986)). "To implement the presumption, courts must be alert to factors that may undermine the fairness of the fact-finding process," and, "[i]n the administration of criminal justice, courts must carefully guard against dilution of the principle that guilt is to be established by probative evidence and beyond a reasonable doubt." *Id.* (quoting *Estelle v. Williams*, 425 U.S. 501, 503, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976)). For this reason, Romero not only argues his right to face-to-face confrontation was violated by Vasquez being permitted to testify in disguise, but also contends he was denied the right to a fair trial by Vasquez's testifying in disguise, making Romero appear guilty and eroding the presumption of innocence.

■ The Texas Court of Criminal Appeals has written that, if a particular practice at trial "tends to brand the defendant with an unmistakable mark of guilt," it impairs the presumption of innocence in violation of the Due Process Clause. *Id.* (citing *Holbrook*, 475 U.S. at 570–71, 106 S.Ct. 1340). "If, on the other hand, the challenged practice need not be interpreted by jurors as a sign that the defendant is particularly dangerous or culpable, it is not inherently prejudicial and does not deny due process." *Id.* The question we must address, therefore, is whether Vasquez's disguise—insisted on because of his fear of retaliation—improperly communicated to the jury that Romero was, in fact, dangerous or culpable.

■ Courts addressing this issue in the past have indicated that "reason, principle, and common human experience" must

guide the determination of whether a particular practice is presumptively prejudicial. *Holbrook*, 475 U.S. at 569, 106 S.Ct. 1340; *Estelle*, 425 U.S. at 504, 96 S.Ct. 1691; *Marx*, 987 S.W.2d at 581. That is, courts must ask whether the scene presented to jurors was so inherently prejudicial as to pose an unacceptable threat to the defendant's right to a fair trial. *Holbrook*, 475 U.S. at 572, 106 S.Ct. 1340. If it is equally probable that jurors will infer from the particular practice at issue some meaning other than the one suspected by the defendant, then the answer to this question is no. Depending on the circumstances of the case, another possibility is that jurors will infer nothing at all from the questioned practice. *See id.* at 569, 106 S.Ct. 1340.

In *Holbrook*, for example, the United States Supreme Court was required to examine whether the presence of four uniformed state troopers sitting directly behind the defendant was so inherently prejudicial that the defendant was denied the right to a fair trial. *Id.* at 570, 106 S.Ct. 1340. Reasoning there were multiple, relatively harmless inferences that could have been made from the officers' presence in the courtroom, the Court ultimately concluded the defendant's rights were not unacceptably threatened. *Id.* at 572, 106 S.Ct. 1340. In *Marx*, the Texas Court of Criminal Appeals reached the same conclusion when considering the prejudicial effect of a child witness testifying outside the defendant's presence via two-way closed circuit television. *Marx*, 987 S.W.2d at 582. Noting the trial court's instruction that such procedures were authorized "in these types of cases," the court agreed that "the instruction likely conveyed to the jury the state's general desire to protect children from the intimidating courtroom environment rather than implying the procedure was necessary because of the defendant's guilt." *Id.* at 581.

■ Unlike the situations presented in *Holbrook* and *Marx*, however, permitting a disguised Vasquez to testify against Romero added an unnecessary element of drama, placed unwarranted emphasis on Vasquez's testimony, and may have unfairly prejudiced the jury against Romero. The trial court's failure to instruct the jury regarding Vasquez's appearance only compounded the problem because the defendant was left in the awkward position of trying to minimize any potential harm by asking Vasquez, in the jury's presence, why he was dressed as he was and then attempt to demonstrate through his testimony why his fears were unfounded. Although it is impossible for this Court to determine the likely damage caused by Vasquez's testifying in disguise or the weight individual jurors may have attributed to his appearance, it posed an unacceptable threat to Romero's right to a fair trial.

*Charge Error*

Having determined that Romero's constitutional rights under the Sixth and Fourteenth Amendments were violated, we need not reach his third point of error alleging charge error at punishment.

*Conclusion*

Recognizing that the protections afforded by the Confrontation Clause are not absolute, a defendant's right to face-to-face confrontation may be abridged only "where denial of such confrontation is necessary to further an important public policy and only where the reliability of the testimony is otherwise assured." *Craig*, 497 U.S. at 849–50, 110 S.Ct. 3157. Satisfaction of this general standard requires more than a mere showing that public policy would be served; instead, it demands that trial courts make case-specific

findings of necessity, justifying the infringement of a defendant's right to confront his or her accusers face to face. In the absence of such a finding of necessity by the trial court, we hold Romero's right to confrontation was unjustifiably violated when Vasquez was permitted to testify in disguise. We also hold that permitting Vasquez to testify in this manner eroded the presumption of innocence, depriving Romero of the right to due process.

As we are unable to conclude beyond a reasonable doubt that these violations did not contribute to Romero's conviction or punishment, we reverse the trial court's judgment and remand this case to the trial court for further proceedings.