IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. PD-0911-04






ISRAEL G. ROMERO, Appellant



v.



THE STATE OF TEXAS





ON STATE'S PETITION FOR DISCRETIONARY REVIEW


FROM THE SIXTH COURT OF APPEALS


HARRIS COUNTY





 Meyers, J., filed a dissenting opinion.


 

 Mr. Israel G. Romero, this is your lucky day. You're going to get a new trial. 

The trial judge erred by allowing an eye witness to your crime to wear a ball cap, jacket,
and sunglasses while testifying. And, even more amazing is that this type of error is
immune from a harm analysis. (1)

 The majority says that two elements of the confrontation clause (2) were
compromised-that being presence and demeanor. While I'm unsure what compromise
means here, I'm fairly confident that the witness was there face-to-face to testify, was
cross-examined, and that his demeanor showed that he was scared to death of the
defendant. In Texas, is an accused entitled to more than this? Apparently so. Since Mr.
Vasquez spoke through an interpreter, I really think this whole controversy is probably
"lost in translation." 

 In Maryland v. Craig, 497 U.S. 836 (1990), the Supreme Court discussed the
purpose of the Confrontation Clause.

 The central concern of the Confrontation Clause is to ensure the reliability
of the evidence against a criminal defendant by subjecting it to rigorous
testing in the context of an adversary proceeding before the trier of fact.
The word "confront," after all, also means a clashing of forces or ideas, thus
carrying with it the notion of adversariness. As we noted in our earliest case
interpreting the Clause: 


 "The primary object of the constitutional provision in question was to
prevent depositions or ex parte affidavits, such as were sometimes admitted
in civil cases, being used against the prisoner in lieu of a personal
examination and cross-examination of the witness in which the accused has
an opportunity, not only of testing the recollection and sifting the
conscience of the witness, but of compelling him to stand face to face with
the jury in order that they may look at him, and judge by his demeanor upon
the stand and the manner in which he gives his testimony whether he is
worthy of belief." Mattox [v. United States] 156 U.S. [237] at 242-243.


 As this description indicates, the right guaranteed by the Confrontation
Clause includes not only a "personal examination," 156 U.S. at 242, but also
"(1) insures that the witness will give his statements under oath -- thus
impressing him with the seriousness of the matter and guarding against the
lie by the possibility of a penalty for perjury; (2) forces the witness to
submit to cross-examination, the 'greatest legal engine ever invented for the
discovery of truth'; [and] (3) permits the jury that is to decide the
defendant's fate to observe the demeanor of the witness in making his
statement, thus aiding the jury in assessing his credibility." [California v.]
Green, [399 U.S. 149] at 158.

The combined effect of these elements of confrontation -- physical
presence, oath, cross-examination, and observation of demeanor by the trier
of fact -- serves the purposes of the Confrontation Clause by ensuring that
evidence admitted against an accused is reliable and subject to the rigorous
adversarial testing that is the norm of Anglo-American criminal
proceedings. 

Craig, 497 U.S. at 845-46.

 But here's the catch, the defense basically neutralized the witness's disguise. Mr.
Vasquez was the only one in the courtroom who thought he was The Phantom of the
Opera. The only effect that wearing a hat and sunglasses had was to make Mr. Vasquez 
more comfortable on the stand and to limit the trauma he felt when testifying against
someone whom he feared. This is similar to the cases cited by the parties, Coy v. Iowa,
487 U.S. 1012 (1988), and Maryland v. Craig, 497 U.S. 836, in which measures were
used to prevent face-to-face contact between the defendant and the witness in order to
prevent trauma to the victims. However, unlike the screen in Coy and the closed circuit
television in Craig, in this case, the outfit worn by Mr. Vasquez did not prevent or
encroach upon face-to-face contact between the defendant and the witness. 

 Attorneys often change the appearance of witnesses appearing in court. Drunks
are sobered up, addicts are cleaned up, and the homeless are dressed up; prostitutes even
appear in business suits. These modifications are intended to persuade the jury that the
witness is reliable. Mr. Vasquez's additions were not intended to fool the jury. Rather it
was simply a method to allay his fears about testifying. Nothing was compromised-just
slightly camouflaged.

 I agree with the trial court's decision to allow the witness to appear as secret agent
man. Therefore, I respectfully dissent.


 Meyers, J.



Filed: October 5, 2005

Publish


1. The court of appeals stated the following as to their harm analysis: "Although it is
impossible for this Court to determine the likely damage caused by Vasquez's testifying in
disguise or the weight individual jurors may have attributed to his appearance, it posed an
unacceptable threat to Romero's right to a fair trial." Romero v. State, 136 S.W.3d 680 (Tex. 
App.-Texarkana 2004). Apparently "threats" to a fair trial can now make an error harmful
beyond a reasonable doubt. See Texas Rule of Appellate Procedure 44.2(a).
2. The Appellant cites Pennsylvania v. Richie, 480 U.S. 39 (1987), stating that "the
Confrontation Clause provides two types of protections for a criminal defendant: the right
physically to face those who testify against him, and the right to conduct cross-examination."