IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. PD-0911-04






ISRAEL G. ROMERO, Appellant



v.



THE STATE OF TEXAS





ON STATE'S PETITION FOR DISCRETIONARY REVIEW


FROM THE SIXTH COURT OF APPEALS


HARRIS (1) COUNTY





 Keller, P.J., delivered the opinion of the Court in which PRICE,
WOMACK, JOHNSON, KEASLER, HERVEY and COCHRAN, JJ., joined. MEYERS,
J., filed a dissenting opinion. HOLCOMB, J., filed a dissenting opinion.


 The question before us is whether the defendant's Sixth Amendment right to confront
witnesses was violated when a witness testified in disguise. Although this is a very close issue, and
one undecided by the United States Supreme Court, we answer that question "yes" and affirm the
judgment of the Court of Appeals.


I. BACKGROUND


 Appellant was indicted for aggravated assault. (2) On the morning of trial, Cesar Hiran 
Vasquez, one of the State's key witnesses, arrived at the courthouse but refused to enter the
courtroom to testify. Vasquez, who had been subpoenaed by the State, notified the State that he
"would rather go to jail than testify in this case" because of his fear of appellant. (3) The State
informed the trial court of Vasquez's fear and his refusal to testify, and the trial court responded by
threatening to fine Vasquez $500 for failing to obey the State's subpoena. (4) Vasquez persisted in his
refusal to testify, however, stating that, because he was "worried for [him]self and [his] children,"
he "would prefer to pay" the fine rather than testify. The trial court then imposed the fine. Shortly
thereafter, Vasquez entered the courtroom wearing dark sunglasses, a baseball cap pulled down over
his forehead, and a long-sleeved jacket with its collar turned up and fastened so as to obscure
Vasquez's mouth, jaw, and the lower half of his nose. The net effect and apparent purpose of
Vasquez's "disguise" was to hide almost all of his face from view. (5) The record reflects that, at the
time of trial, appellant was aware of Vasquez's name and address.

 Appellant objected to the "disguise" on the basis of his "right to confrontation" and, more
generally, his "right to a fair trial." The trial court overruled these objections. 

 The State then called Vasquez to the stand, outside the presence of the jury, to testify
regarding appellant's motion to suppress Vasquez's in-court identification of appellant. Vasquez
testified that he was operating a taxicab on May 10, 2002, at approximately 1:45 a.m., outside the
Cosmos nightclub in Houston, when he saw appellant run toward the nightclub and, for no apparent
reason, fire several shots in that direction. Given Vasquez's proximity to the nightclub's entrance,
appellant's shots came fairly close to him. A security guard at the nightclub returned fire and hit
appellant in the back. Appellant then retreated to a pickup truck and sped away, stopping once to
fire again in the direction of the nightclub. Vasquez's testimony continued:

Q: [DEFENSE COUNSEL] If the Court were to order you not to wear your
sunglasses, your hat, [and] your jacket with my client present in the courtroom, are
you still going to testify.


 * * *


A: For my safety, I wouldn't do it.


 * * *


Q: [PROSECUTOR] Why are you afraid to testify against this defendant?


A: Because of the way that it could be seen that he was going to attack the security
guard. It can be seen that he's a person who's dangerous on the street.


Q: And does it worry you or concern you if he was able to see your face?


A: Yes.


Q: What are you afraid that he would do?


A: To take revenge.


[PROSECUTOR]: I have no further questions.


Q: [DEFENSE COUNSEL] Well, my client's never threatened you, has he?


A: No.


Q: All right. He's given you no reason to be afraid of him, right?


A: Didn't you see the way he's looking at me?


 * * *


Q: You're just afraid, right?



A: For my safety.


 * * *


Q: You just don't like the way he's looking at you, right, basically?


A: No.


Q: Then what is it?


A: The way I saw him attack with the gun.


 At the conclusion of Vasquez's testimony, appellant again objected to the disguise, and the
trial court again overruled the objection. Vasquez later testified before the jury wearing his disguise. 
The jury found appellant guilty and assessed punishment at imprisonment for ten years.

 On direct appeal, appellant brought three points of error. In his first two points, appellant
complained that the trial court erred in permitting Vasquez to testify in his disguise. In point of error
number one, appellant argued that the trial court's ruling denied him his Sixth Amendment right to
confrontation "[b]ecause [Vasquez's] ball cap, large opaque sunglasses and mask [sic] prevented a
face-to-face confrontation [and hindered] the jury's ability to observe [Vasquez's] demeanor and
assess his credibility." In point of error number two, appellant argued that the trial court's ruling
denied him his Fourteenth Amendment right to the presumption of innocence because Vasquez's
"use of a disguise . . . could only have lead [sic] the jury to believe the defendant was guilty,
dangerous and prone to vengeance." The court of appeals sustained appellant's first two points of
error, reversed the judgment of the trial court, and remanded the case to the trial court for further
proceedings. (6)

 The State filed a petition for discretionary review, arguing, among other things, that
Vasquez's act of testifying in disguise did not violate appellant's Sixth Amendment right to confront
witnesses. Having granted review, we now turn to that issue.

II. Analysis


 The Sixth Amendment's Confrontation Clause (7) reflects a strong preference for face-to-face
confrontation at trial. (8) An encroachment upon face-to-face confrontation is permitted only when
necessary to further an important public interest and when the reliability of the testimony is
otherwise assured. (9) 

A. Reliability


 Whether the reliability of the testimony is otherwise assured turns upon the extent to which
the proceedings respect the four elements of confrontation: physical presence, oath, cross-examination, and observation of demeanor by the trier of fact. (10) In Maryland v. Craig, the Supreme
Court found sufficient assurance of reliability in a procedure that denied one of these elements -
physical presence - where the remaining three elements were unimpaired. (11) In that case, a child
witness testified in front of a one-way closed-circuit monitor that prevented her from seeing the
defendant but permitted the judge, jury, and defendant to see the witness. (12) Because the witness was
under oath, subject to contemporaneous cross-examination, and her demeanor was on display before
the trier of fact, the Supreme Court found that the procedure adequately ensured that the testimony
was "both reliable and subject to rigorous adversarial testing in a manner functionally equivalent to
that accorded live, in person testimony." (13)

 In this case, as with Craig, the presence element of confrontation was compromised. 
Although the physical presence element might appear, on a superficial level, to have been satisfied
by Vasquez's taking the witness stand, it is clear that Vasquez believed the disguise would confer
a degree of anonymity that would insulate him from the defendant. The physical presence element
entails an accountability of the witness to the defendant. The Supreme Court has observed that the
presence requirement is motivated by the idea that a witness cannot "hide behind the shadow" but
will be compelled to "look [the defendant] in the eye" while giving accusatory testimony. (14) In the
present case, accountability was compromised because the witness was permitted to hide behind his
disguise.

 But unlike Craig, the present case also involves a failure to respect a second element of
confrontation: observation of the witness's demeanor. Although Vasquez's tone of voice was
subject to evaluation and some body language might have been observable, the trier of fact was
deprived of the ability to observe his eyes and his facial expressions. And while wearing a disguise
may itself be an aspect of demeanor that jurors could consider in assessing credibility, that fact
cannot by any stretch of the imagination be considered an adequate substitute for the jurors' ability
to view a witness's face, the most expressive part of the body and something that is traditionally
regarded as one of the most important factors in assessing credibility. To hold otherwise is to
remove the "face" from "face-to-face confrontation."

B. Important interests


 While there may be circumstances sufficient to justify a procedure that overrides not just one
but two elements of a defendant's right to confrontation, those circumstances should rise above the
"important" interests referred to in Craig to interests that are truly compelling. But we do not see
an important interest served in the present case, much less a compelling one. 

 One important, even compelling, interest might be to protect a witness from retaliation, but
the disguise in this case did little to further such an interest because Vasquez's name and address,
but not his face, were already known to the defendant. (15) Although Vasquez might reasonably fear
that the defendant would be able to connect his facial features and appearance to his name and
address, this connection could easily be made without any in-court appearance. A defendant seeking
retaliation could simply knock on the door at the known address and ask for the named person. 
Moreover, this is not a case in which the defendant gave the victim or the authorities any concrete
reason for suspecting retaliation, nor is this a case in which the defendant was shown to belong to
a crime syndicate or a street gang from which retaliation might be anticipated. 

 At best, the disguise worked to allay the witness's subjective fear of retaliation. But some
degree of trauma is to be expected in face-to-face confrontations. (16) Calming an adult witness's fears
is quite a different thing from protecting a child victim from serious emotional trauma. Adults are
generally considered to be made of sterner stuff and capable of looking after their own psychological
well-being. And the difference is especially great when the adult witness is not the victim, but
merely a bystander who observed events, and when the basis of the witness's fear is simply that the
defendant committed a violent crime and gave the witness a bad look. If those circumstances are
sufficient to justify infringing on a defendant's right to face-to-face confrontation, then such
infringement can be carried out against anyone accused of a violent crime. That outcome would
violate the principle that face-to-face confrontation may be deprived only in exceptional situations. (17) 
 C. Harm


 In ground four, the State contends that any error was harmless. Citing Morales v. Artuz, (18)
it argues that sunglasses only minimally impair a jury's ability to assess witness credibility; that the
testimony of the witness was cumulative; and that the presumption-of-innocence jury charge cured
or minimized any harm. But aside from the fact that the disguise consisted of far more than
sunglasses, the State's first argument is really directed toward error, i.e., whether his confrontation
rights were in fact violated. And, as to the second argument, though the complainant also gave
eyewitness testimony, he had shot the appellant and thus had a possible interest in the appellant
being the perpetrator. Under these circumstances, we cannot say that the testimony was cumulative
and thus harmless. And finally, the State's harmlessness argument regarding the presumption-of-innocence charge relates only to grounds two and three, and is not pertinent to the confrontation
issue. The State has, thus, failed to show us why the error was harmless beyond a reasonable
doubt. (19) 

 We affirm the judgment of the Court of Appeals.

 Keller, Presiding Judge

Date delivered: October 5, 2005

Publish

1. The record reflects that the Texas Supreme Court transferred this case from the First
Court of Appeals to the Sixth Court of Appeals. See Tex. Gov't Code §73.001.
2. Tex. Pen. Code §22.02(a)(2).
3. The record reflects that Vasquez spoke little English and that all of his communications
were through an interpreter. 
4. See Tex. Code Crim. Proc., Art. 24.05.
5. Our description of Vasquez's appearance is consistent with Defendant's Exhibit "A," a
Polaroid photograph, included in the case record, that purports to show Vasquez on the witness
stand in disguise. Although the trial court never actually admitted the photograph into evidence,
the State, during oral argument in this Court, implicitly conceded the accuracy of the photograph.
6. Romero v. State, 136 S.W.3d 680, 691 (Tex. App.-Texarkana 2004).
7. "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted
with the witnesses against him." U.S. Const., Amend. VI.
8. Maryland v. Craig, 497 U.S. 836, 845-850 (1990).
9. Id. at 850.
10. Id. at 846.
11. Id. at 851.
12. Id.
13. Id.
14. Coy v. Iowa, 487 U.S. 1012, 1018 (1988).
15. See Craig, 497 U.S. at 856 (there must be a causal connection between the defendant's
presence and the trauma the State seeks to prevent).
16. Coy, 487 U.S. at 1020 ("face-to-face presence may, unfortunately, upset the truthful
rape victim or abused child; but by the same token it may confound and undo the false accuser,
or reveal the child coached by a malevolent adult. It is a truism that constitutional protections
have costs").
17. Id. at 850 ("That the face-to-face confrontation requirement is not absolute does not, of
course, mean that it may be easily dispensed with").
18. 281 F.3d 55 (2nd Cir. 2002),
19. In two other grounds, the State contends that appellant failed to preserve his
presumption-of-innocence argument for review (ground two), and that Vasquez's act of testifying
in disguise did not unduly compromise appellant's presumption of innocence (ground three). 
Due to our disposition of grounds one and four, we have no occasion to consider grounds two
and three. Consequently, they are dismissed.