In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-03-00094-CR
______________________________


THOMAS D. CUNNINGHAM, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the County Court at Law
Harrison County, Texas
Trial Court No. 2002-1289


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Justice Ross


O P I N I O N

          A jury found Thomas D. Cunningham guilty of displaying harmful material to a
seven-year-old girl named "Jodi." See Tex. Pen. Code Ann. § 43.24(b)(2) (Vernon 2003).


 
Cunningham was almost thirty-six years of age at the time of the offense. Displaying
harmful material to a minor, as charged in this case, is a class A misdemeanor. See Tex.
Pen. Code Ann. § 43.24(d). The trial court imposed punishment of 365 days in the county
jail and a fine of $4,000.00, in accordance with the jury's verdict. See Tex. Pen. Code Ann.
§ 12.21 (Vernon 2003). Cunningham raises eight points of error on appeal. We affirm the
judgment.
I. Legal and Factual Sufficiency
          In his first and second points of error, Cunningham contends the evidence is legally
and factually insufficient to support a guilty verdict because there was no evidence
Jodi—who observed only the magazine's cover, not the magazine's contents—saw
anything harmful.


 
          When reviewing the evidence for legal insufficiency, we examine the relevant
evidence in the light most favorable to the verdict to determine whether any rational trier
of fact could have found the essential elements of the crime beyond a reasonable doubt. 
Johnson, 23 S.W.3d at 7. In reviewing the factual sufficiency of the evidence, we must
determine whether, considering all the evidence in a neutral light, the jury was rationally
justified in finding guilt beyond a reasonable doubt. Zuniga v. State, No. 539-02, 2004 Tex.
Crim. App. LEXIS 668, at *20 (Tex. Crim. App. Apr. 21, 2004). There are two ways in
which we may find the evidence to be factually insufficient. Id. First, if the evidence
supporting the verdict, considered alone, is too weak to support the jury's finding of guilt
beyond a reasonable doubt, then we must find the evidence insufficient. Id. Second,
if—when we weigh the evidence supporting and contravening the conviction—we conclude
that the contrary evidence is strong enough that the state could not have met its burden
of proof, we must find the evidence insufficient. Id. "Stated another way, evidence
supporting guilt can 'outweigh' the contrary proof and still be factually insufficient under a
beyond-a-reasonable-doubt standard." Id. If the evidence is factually insufficient, then we
must reverse the judgment and remand for a new trial. Clewis, 922 S.W.2d at 135. 
          According to her trial testimony, Jodi was spending the night with her cousin,
Christian, in March 2001. Christian lived in a mobile home with Lindsay (his younger sister,
who is also Jodi's cousin), Robin (Jodi's aunt and Christian's mother), and Cunningham. 
Cunningham and Robin were not married, but had apparently been dating for a while. 
          During the evening, Jodi had been watching Christian play a Nintendo game; when
she wandered away from Christian's room, she was called by Cunningham into a
bathroom. She went inside the bathroom, and Cunningham said to her, "If you show me
yours, I'll show you mine." Jodi interpreted Cunningham's statement as a request for her
to show her private parts to him, and he would then show his private parts to her. At trial,
Jodi testified that at the time Cunningham said this, he had his pants unzipped with his
hand inside his pants.


 
          Jodi became frightened and attempted to leave the bathroom. Cunningham,
however, stopped her. According to Jodi's testimony, Cunningham then reached up to the
shelves in the bathroom. "He had a dirty magazine there, and he showed me one." Jodi
fled the bathroom, ran to Christian's room, and told Christian what had happened. 
          During the incident, Jodi saw only the cover of the magazine. Cunningham did not
show her anything inside the magazine. However, when asked by the State whether the
magazine cover had "kind of like a naked woman on it or half-naked" woman, Jodi
responded affirmatively. Jodi also testified she thought she saw "a guy that was naked
kissing a girl . . . ." And Jodi was certain the magazine was a "nudie" magazine, possibly
with the word "boy" in the title. Jodi also testified Cunningham had shown her such a
magazine on a previous occasion.


 
          Additionally, Jodie testified at trial about a third incident where Cunningham had
shown her a "dirty" magazine. According to Jodi's testimony, when she was at
Cunningham's home, he told her to look for some candy in the bathroom cabinet. He then
took her into the bathroom and opened the cabinet door. Jodi said she found no candy in
the bathroom cabinet, but instead saw some "dirty" magazines. One magazine,
presumably the only one she saw during that incident, had a cover photograph of women
with their breasts exposed. 
          Shortly after the incident on which the current prosecution was based, Cunningham
moved out of the mobile home where he, Robin, Christian, and Lindsay had been living. 
The mobile home was owned by Shirley Brooks, Jodi's grandmother. After Cunningham
moved out, Brooks cleaned the home and found "[s]ome filthy magazines." According to
Brooks, these magazines were in several cabinets throughout the home, including the
bathroom, laundry room, and bedroom. Brooks described them as having pictures of
naked women. Brooks later threw away these magazines. 
          Texas law defines "harmful material" as that material 
whose dominant theme taken as a whole: 
 
(A) appeals to the prurient interest of a minor, in sex, nudity,
or excretion; 
 
(B) is patently offensive to prevailing standards in the adult
community as a whole with respect to what is suitable for minors; and 
 
(C) is utterly without redeeming social value for minors.

Tex. Pen. Code Ann. § 43.24(a)(2).
          Examining the evidence presented at trial in the light most favorable to the jury's
verdict, a rational juror could have found the State presented legally sufficient evidence that
Cunningham displayed "harmful material" to a minor. Jodi testified Cunningham showed
her a magazine whose cover depicted either a bare-chested woman or a naked man
kissing a woman, or possibly both. Jodi repeatedly identified the magazine she had been
shown as a "nudie" or "dirty" magazine, implying it was a magazine that would appeal to
one's prurient interest in sex. Taking Jodi's description of the magazine she saw, as well
as Brooks' description of the several magazines she found left by Cunningham at the
mobile home, and considering that evidence in context with Jodi's report that, shortly
before Cunningham displayed the magazine to her, he had his pants unzipped with his
hand inside his pants and said to this seven-year-old child, "If you show me yours, I'll show
you mine," the jury could reasonably infer the magazine was material that would appeal to
one's prurient interest in sex, was patently offensive with respect to what is suitable for
minors, and was without redeeming social value for minors. Accordingly, we find the
evidence legally sufficient to support Cunningham's conviction.
          Similarly, after examining all the evidence in a neutral light, we conclude the jury
was rationally justified in finding, beyond a reasonable doubt, that the magazine cover
displayed by Cunningham on the day in question was "harmful material." First,
Cunningham concedes in his brief on appeal that "[t]his case does not involve conflicting
evidence where the jury had to make a credibility determination." Accordingly, we need
not consider whether the evidence contravening the conviction greatly outweighs the
evidence supporting the jury's verdict.
          Instead, Cunningham contends "[t]he complainant never testified that what she
actually saw was harmful . . . ." This is not an accurate assessment of the record. Jodi
repeatedly called the magazine a "nudie" or "dirty" magazine and said the magazine cover
she had seen had "kind of like a naked woman on it" or had "a guy that was naked kissing
a girl." These descriptions, combined with Brooks' testimony regarding her discovery of
"filthy" magazines throughout Cunningham's former residence (including the bathroom),
are not so weak the jury could not have found, beyond a reasonable doubt, that the image
seen by Jodi met the statutory requirement of "harmful material." See Tex. Pen. Code Ann.
§ 43.24(a)(2)(A). Accordingly, we overrule Cunningham's challenges to the factual and
legal sufficiency of the evidence.
II. Speedy Trial
          In his next point of error, Cunningham claims he was denied his right to a speedy
trial. To determine whether an accused has been denied the right to a speedy trial, the trial
court should employ the balancing test of Barker v. Wingo, 407 U.S. 514, 530 (1972). We
conduct a de novo review of a trial court's ruling on a motion for speedy trial. Holmes v.
State, 938 S.W.2d 488, 489–90 (Tex. App.—Texarkana 1996, no pet.). In conducting that
review, we consider the length of delay, the parties' reasons for the delay, whether the
defendant asserted the right to a speedy trial, and any prejudice to the defendant resulting
from that delay. Id. at 490; see also Shaw v. State, 117 S.W.3d 883, 888–89 (Tex. Crim.
App. 2003). "No single factor is necessary or sufficient to establish a violation of the
defendant's right to a speedy trial." Shaw, 117 S.W.3d at 889 (citing Barker, 407 U.S. at
533). 
          We must also review the trial court's ruling on a motion to dismiss for want of a
speedy trial "in light of the arguments, information, and evidence that was available to the
trial court at the time it ruled." Id. (citing Dragoo v. State, 96 S.W.3d 308, 313 (Tex. Crim.
App. 2003)). Further, we are to uphold the trial court's ruling if it is supported by the record
and correct under the applicable law. Id. (citing State v. Munoz, 991 S.W.2d 818, 821
(Tex. Crim. App. 1999)).
          The following is a chronology of the events relevant to this issue:

 
Mar. 19, '01        -  Date of alleged offense
May '01              -  Cunningham arrested 
May '01              -  Cunningham released from jail on bond 
Dec. '01/Jan. '02-   Cunningham misses court; posts $2,000.00 bond 
Spring '02          -  Cunningham requests case be postponed 
Spring '02          -  State requests case be postponed 
Dec. 13, '02       -  State dismisses previous information and complaint, files
new information and complaint using correct victim
Jan./Feb. '03      -  Cunningham fails to appear for trial 
Feb. 18, '03        -  Cunningham requests appointment of defense counsel;
trial court appoints counsel
Mar. 24, '03        -  Cunningham fails to appear for trial
Apr. 17, '03        -  Cunningham files pretrial motions, including request that
case be dismissed for failure to conduct speedy trial
Apr. 21, '03        -  Trial begins

 
 
          A. Length of Delay
          We measure the length of the delay from the time the accused is arrested or
formally charged. Id. In this case, Cunningham testified he was originally arrested on this
charge in May 2001; trial was not held until twenty-three months later. The Texas Court
of Criminal Appeals has held that a delay greater than eight months is presumptively
unreasonable. Harris v. State, 827 S.W.2d 949, 956 (Tex. Crim. App. 1992). Thus, the
delay in this case was sufficient to trigger a speedy trial inquiry. Further, the delay was
almost twice as long as the one-year time frame recently described by the Texas Court of
Criminal Appeals as sufficient to trigger the speedy trial inquiry. See Shaw, 117 S.W.3d
at 889. Therefore, this first factor of the Barker analysis weighs in Cunningham's favor.
          B. Reasons for Delay
          We next consider the parties' reasons for the delay. The state has the burden of
justifying the delay. Id. at 889 n.3 (citing Turner v. State, 545 S.W.2d 133, 137–38 (Tex.
Crim. App. 1976)). The record in this case reflects that both sides, on at least one
occasion, asked for postponement of the case. The State's request for postponement was
granted, while Cunningham's request was denied, according to his testimony. The clerk's
record in this case contains no written request for postponement, nor does it contain a
written order or docket sheet entry noting the trial court formally approved the State's
request for a continuance. The record is also silent regarding why an informal continuance
was granted to the State, yet denied to Cunningham. 
          Cunningham testified that, between the date of his initial arrest and December 2002,
he made several attempts to discuss the case with the prosecutor. On appeal,
Cunningham claims those attempts amounted to an assertion of his right to a speedy trial. 
The record does not, however, support such a claim. As the State properly points out, and
as Cunningham testified at the pretrial hearing, Cunningham contacted the prosecutor on
numerous occasions because he wanted to have the case dismissed for lack of evidence,
not because he wanted the case to proceed to trial. Regardless, Cunningham's efforts to
negotiate the case with the prosecutor were fruitless: the prosecutor rebuffed
Cunningham's attempts with an instruction that he needed to have a lawyer to represent
him and that the prosecutor would not discuss the facts of the case. 
          A significant contributing factor to the delay of trial was Cunningham's lack of notice
of several trial settings. Cunningham moved shortly after he was arrested and did not give
his new mailing address to either the district attorney's office (which is apparently
responsible for notifying defendants of trial settings) or to the trial court, which resulted in
at least three delays of at least two months each because Cunningham had not appeared
and could not be located. 
          Another significant factor contributing to the delay was that in December 2002,
nineteen months after his initial arrest, the State dismissed the case against Cunningham
because it had alleged the wrong complainant. The case was subsequently refiled with the
name of the proper complainant. Nothing in the record explains why the State failed to
uncover the error during the first seventeen months in which the case was pending. Nor
is there anything in the record to explain the delay between December 2002 and the day
trial began. 
          While six of the twenty-three months were properly attributable to Cunningham's
repeated failures to attend court, the State offered no explanation of the remaining
seventeen-month delay. Consequently, this second factor of the Barker analysis weighs
in Cunningham's favor. Cf. id. at 889–90 (state's failure to explain most of lengthy delay
factored in accused's favor).
          C. Assertion of Right
          Cunningham did not assert his right to a speedy trial until April 17, 2003. Trial
began four days later. Although Cunningham's failure to assert the claim earlier does not
waive his right to a speedy trial, his failure to assert the right in a more timely fashion tends
to indicate strongly he did not want a speedy trial. Cf. Barker, 407 U.S. at 531–32; Harris,
827 S.W.2d at 957. "This is so because a defendant's failure to make a timely demand
for a speedy trial indicates strongly that he did not really want one and that he was not
prejudiced by not having one." Shaw, 117 S.W.3d at 890 (citing Dragoo, 96 S.W.3d at
314). In view of Cunningham's "quiet acquiescence" to the delay, we hold this third factor
of the Barker analysis weighs in favor of finding no violation of Cunningham's right to a
speedy trial.
          D. Prejudice
The final factor of prejudice must be assessed in the light of the
interests of defendants which the speedy trial right was designed to protect: 
(1) to prevent oppressive pretrial incarceration; (2) to minimize anxiety and
concern of the accused; and (3) to limit the possibility that the defense will
be impaired. 

Harris, 827 S.W.2d at 957 (citing Barker, 407 U.S. at 532); see also Shaw, 117 S.W.3d at
890. The first consideration does not apply because Cunningham was free on bond during
the pendency of the case. Cf. Shaw, 117 S.W.3d at 890 (appellant's release on bond
nullifies consideration of first factor).
          The second consideration, however, weighs in Cunningham's favor. He testified at
the pretrial hearing that the delay in resolving this case had caused him great anxiety. He
had lost sleep and had been seeing a counselor at a local mental health and mental
retardation center. The pending criminal charge had also prompted the Texas Department
of Protective and Regulatory Services to remove all the children living in Cunningham's
home. This was, at a minimum, some evidence Cunningham had experienced unusual
anxiety or concern beyond the level normally associated with being charged with a crime.
          But the third consideration—whether Cunningham's defense was impaired due to
the delay—does not weigh in Cunningham's favor. The presumption that a lengthy delay
adversely affects an appellant's ability to defend himself or herself, see id. at 890, was (in
this case) overcome by Cunningham's apparent long-time acquiescence in the delay. Cf.
id. And Cunningham demonstrated no actual prejudice to his ability to defend himself. Cf.
id. at 890–91 (shouldering defendant with burden to demonstrate "actual prejudice" under
third factor).
          E. Balancing the Factors
          Having considered the evidence relevant to the four Barker factors, we must now
balance that evidence. Harris, 827 S.W.2d at 957. The twenty-three-month delay is quite
unusual, especially for a misdemeanor case. The State failed to explain at least seventeen
months of that delay, as was its burden. And the record shows the protracted delay in
trying the case caused Cunningham anxiety and inconvenience. However, the record does
not show Cunningham's ability to present a defense was harmed by the delay. And the
record shows (1) Cunningham failed to assert his right to a speedy trial until twenty-three
months after his arrest, and (2) he quietly acquiesced to the intervening delay. Therefore,
we hold that the weight of all the Barker factors, when balanced together, is against a
finding of a violation of Cunningham's right to a speedy trial. We overrule Cunningham's
third point of error.
III. Permitting Jodi's Mother to Testify as Outcry Witness
          In his fourth point of error, Cunningham contends the trial court erred by permitting
Jodi's mother to testify regarding Jodi's hearsay statements. Cunningham contends the
statements were not admissible under the "present sense impression" exception to the
hearsay rule. See Tex. R. Evid. 803(1). 
          A trial court's decision to admit or exclude evidence is reviewed for abuse of
discretion. Shaw v. State, 122 S.W.3d 358, 363 (Tex. App.—Texarkana 2003, no pet.). 
A trial court abuses its discretion only when its decision "was so clearly wrong as to lie
outside that zone within which reasonable persons might disagree." Cantu v. State, 842
S.W.2d 667, 682 (Tex. Crim. App. 1992). Even if we disagree with the trial court's ruling
on an evidentiary matter, that ruling will be upheld if it is permissible under any theory
applicable to the case. Shaw, 122 S.W.3d at 363 (citing Romero v. State, 800 S.W.2d
539, 543 (Tex. Crim. App. 1990)). The erroneous admission of evidence is
nonconstitutional error and shall be reviewed for harm under Rule 42.2(b) of the Texas
Rules of Appellate Procedure. Johnson v. State, 967 S.W.2d 410, 417 (Tex. Crim. App.
1998). 
          Under Rule 44.2(b), if the reviewing court, after examining the record as a whole,
"has fair assurance that the error did not influence the jury, or had but slight effect," then
the criminal conviction will not be overturned. Id. Moreover, if other properly admitted
evidence proves the same fact or facts shown by the improperly admitted evidence, then
the trial court's erroneous admission of hearsay will be harmless. See Brooks v. State, 990
S.W.2d 278, 287 (Tex. Crim. App. 1999). "This rule applies whether the other evidence
was introduced by the defendant or the State" and whether the evidence was received
either before or after the complained-of ruling. Leday v. State, 983 S.W.2d 713, 718 (Tex.
Crim. App. 1998).
          "'Hearsay' is a statement, other than one made by the declarant while testifying at
the trial or hearing, offered in evidence to prove the truth of the matter asserted." Tex. R.
Evid. 801(d). Hearsay is not admissible unless otherwise provided for by statute or the
Texas Rules of Evidence. Tex. R. Evid. 802. One exception to the prohibition against
admission of hearsay involves a declarant's present sense impression; "[a] statement
describing or explaining an event or condition made while the declarant was perceiving the
event or condition, or immediately thereafter" is a present sense impression. Tex. R. Evid.
803(1). 
          In the case now on appeal, the trial court admitted testimony from Jodi's mother
regarding two hearsay statements made by Jodi. The relevant passages of the transcript
follow: 
A.Jodi is a real flamboyant, open child. And she just seemed real
sullen and quiet.
 
Q.And did you ask her what was wrong?
 
A.Yeah. I told her -- I explained to her that, you know, she could
tell me anything. I had just went through a divorce, and I was just trying to
assure her, you know, that "Mom is there for you no matter what." 
 
Q.Now, did you ask her this on the drive home or when she was
at the mobile home at that time?
 
A.No. On the drive home.
 
Q.Okay. What did she tell you?
 
[Defense Counsel]: I'm going to object, Your Honor. It calls for
hearsay.
 
[State]: Present sense impression, Your Honor.
 
THE COURT: Overruled.

                     . . . .
 
A.She was just like, "Well, I really don't want to tell, you know. It's
nothing." And, you know, not being vain or anything, but she is my oldest
daughter, my birthday was coming up, and I thought she was trying to plan
something. I had no idea what she was going to tell me. 
 
And, you know, she called me, she said, "Mom," -- we got home, and
she said, "Mom, I don't want anybody to be mad at me," she said, "but Uncle
Tom" -- because that's what she called him -- "told me if I'd show him mine,
he would show me his."

                     . . . .

                     Q.       Did she give you any other details that went with that?
 
A.She said that he touched himself. She ran into the room to get
away from him; to Christian. The house -- the trailer house, Christian's room,
sat at the end. . . . And she ran into Christian's room and was trying to get
away from Tom. And then even said Tom had came [sic] in there and told
Jodi to go out. So much has happened -- this has been two years. And she
told me that -- also about a dirty magazine. He had told her [to] look for
some candy and directed her into the bathroom and said, "Oh, try down
there," and there was a pornographic magazine.

Cunningham contends the harm in the admission of this hearsay "is the cumulative nature
of this erroneous testimony." 
          To its credit, the State concedes (1) the complained-of testimony is hearsay,
(2) Jodi's mother was not designated as an outcry witness,


 and (3) the complained-of
testimony was not admissible under the present sense impression exception to the hearsay
rule. The State, however, contends the substance of the complained-of evidence was
admitted elsewhere without objection. 
          The complained-of testimony contains two statements that are harmful to
Cunningham. First, Jodi's mother testified Jodi had said Cunningham would show his
private parts to her if she would show her private parts to him. Second, the mother told
jurors that Jodi had been instructed by Cunningham to look for candy in the bathroom
cabinet; and on doing so, Jodi found a pornographic magazine. 
          With respect to the first statement, the jury had already heard Jodi testify
Cunningham had so propositioned her on the day in question. This testimony was
admitted without a proper objection from Cunningham.


 The jury had also heard Jodi
testify on direct examination that, on a different occasion when she found a dirty magazine,
she had been directed to its location by Cunningham. Cunningham did not object to this
testimony. Further, Cunningham cross-examined Jodi at trial about this latter subject. 
Because the complained-of evidence was admitted elsewhere without objection, any error
by the trial court in admitting hearsay testimony from Jodi's mother was harmless. We
overrule Cunningham's fourth point of error.
IV. Denial of Confrontation of Witness
          In his fifth point of error, Cunningham contends the trial court violated his Sixth
Amendment right to confront the complainant by allowing her to testify via closed-circuit
television, over his objection. According to Cunningham, the State failed to show that a
necessity existed for the child to testify via closed-circuit television. 
As a prerequisite to presenting a complaint for appellate review, the record
must show that:
 
(1) the complaint was made to the trial court by a timely
request, objection, or motion that:
 
(A) stated the grounds for the ruling that the
complaining party sought from the trial court with sufficient
specificity to make the trial court aware of the complaint, . . . .
Tex. R. App. P. 33.1. The record before us shows Cunningham objected to testimony via
closed-circuit television because the State had not "established the statutory
requirements," presumably the requirements of Article 38.071:


 
[State]:State would ask for latitude in this matter and allow us
to examine the State's witness, the victim in this case, by remote television.
 
[Defense Counsel]:We object to it. Your Honor, they have not
established the statutory requirements to do so. In addition to that, I have
not been provided with the proper mechanics of it, the communications --
 
[State]:State doesn't have to --
 
THE COURT:First of all, the objection to the video presentation
of the witness is overruled. The witness will be -- testify by videotape.

Cunningham's objection did not raise the Sixth Amendment issue, yet the error raised on
appeal is grounded on the Sixth Amendment. As the constitutional issue was not
presented to the trial court, we hold it was not preserved for appellate review. See Tex. R.
App. P. 33.1(a)(1)(A) (objection must be sufficiently specific to make trial court aware of
complaint); Santellan v. State, 939 S.W.2d 155, 171 (Tex. Crim. App. 1997) (objection on
appeal must comport to objection at trial); Braddock v. State, 5 S.W.3d 748, 756 (Tex.
App.—Texarkana 1999, no pet.) (defendant's objection to admission of statements at trial
based on failure to receive proper warnings did not preserve appellate objection to
admission based on failure to electronically record same statement). 
          Even if preserved, we would hold that Cunningham's Sixth Amendment right to
confront the complainant was not violated. 
          "Although face-to-face confrontation forms 'the core of the values furthered by the
Confrontation Clause . . . [the United States Supreme Court has] nevertheless recognized
that it is not the sine qua non of the confrontation right." Maryland v. Craig, 497 U.S. 836,
847 (1990). Indeed, the clause's primary purpose is "to prevent depositions or ex parte
affidavits from being used against a defendant in lieu of testimony subject to cross-examination." Romero v. State, 136 S.W.3d 680, 683 (Tex. App.—Texarkana 2004, pet.
filed) (citing Craig, 497 U.S. at 845). The Confrontation Clause's preference for face-to-face confrontation at trial "must occasionally give way to considerations of public policy and
the necessities of the case." Craig, 497 U.S. at 849. 
Nevertheless, the requirement may not easily be dispensed with because "a
defendant's right to confront accusatory witnesses may be satisfied absent
a physical, face-to-face confrontation at trial only where denial of such
confrontation is necessary to further an important public policy and only
where the reliability of the testimony is otherwise assured."

Romero, 136 S.W.3d at 684 (quoting Craig, 497 U.S. at 850). In Craig, the Supreme Court
upheld the Maryland statute allowing child testimony via closed-circuit television only after
the state made an adequate showing of necessity, "evidencing the trauma that would be
caused by compelling the particular child witness in that case to confront her alleged
abuser." Id. 
          A finding of necessity must be made on a case-by-case basis. Gonzales, 818
S.W.2d at 762. During this inquiry regarding necessity, the trial court must ask several
questions: "First, 'whether use of the one-way closed-circuit procedure is necessary to
protect the welfare of the particular child witness who seeks to testify.'" Id. (quoting Craig,
497 U.S. at 855). "Second, the trial court must also find 'that the child witness would be
traumatized, not by the courtroom generally, but by the presence of the defendant.'" Id.
(quoting Craig, 497 U.S. at 856). "Third and finally, the trial court must determine that the
emotional distress suffered by the child witness in the presence of the defendant is 'more
than de minimis, i.e., more than mere nervousness or excitement or some reluctance to
testify.'" Id. (quoting Craig, 497 U.S. at 856). If the trial court makes these three specific
findings, and if those findings are supported by the evidence, then the defendant's
constitutional right to confront the witness is not violated, so long as the procedure used
ensures the reliability of the evidence by subjecting the testimony to rigorous cross-examination, thus preserving the essence of "effective confrontation." Id. at 762, 764.
          In the case now on appeal, the State elicited testimony from Terri Cawley regarding
the necessity of allowing Jodi to testify via closed-circuit television. Cawley was formerly
the forensic interviewer for the Longview Child Advocacy Center; she holds degrees in
social work and sociology, and she is also a certified domestic violence counselor. Cawley
told the trial court she believed Jodi was "absolutely" going to be traumatized to a point
where she could not face Cunningham in the courtroom unless she testified via closed-circuit television. Cawley based her opinion on the interview of Jodi that was conducted
two years before trial, in which Jodi said she was afraid of Cunningham and reported being
traumatized by Cunningham on at least four occasions. Cawley also based her opinion on
her observations of Jodi's body language during a short meeting the two had the afternoon
before trial. On cross-examination, however, Cawley admitted that, during that same
meeting, the two had not discussed how Jodi felt about testifying in court. 
          At the conclusion of the hearing on necessity, the trial court made the following
findings and conclusions.
          [Findings of fact:]
1.  Jodi [ ] was seven years of age at the time of the offense, (this fact was
first mentioned in the State's opening statement, and in the testimony of
Darrell Pruitt, Harrison County Sheriff's Department);
 
2.  Jodi [ ] was traumatized by the events alleged in the Information to the
extent she could not face the defendant in open court, (Terry Cawley,
forensic interviewer);
 
3.  Jodi [ ] was clinging to her mother when talked to by Terry Cawley the day
before trial, which was conduct on her part reflecting anxiety, (Defense
counsel's cross examination of Terry Cawley);
 
4.  Jodi [ ] was the subject of as many as four separate incidents of improper
behavior on the part of the defendant, (Defense counsel's cross
examination of Terry Cawley);
 
5.  Jodi [ ] was so afraid of the defendant she couldn't be in the same room
with him, (Terry Cawley);
 
6.  The court devised suitable procedures for the defendant to be able to
view and hear the testimony in real time, and consult with his attorney;
 
[Conclusions of Law:]
 
1.  Jodi [ ] had suffered multiple occasions of traumatic infliction by the
defendant;
 
2.  It was necessary to use a one-way closed-circuit procedure to protect the
welfare of this particular child witness, Jodi [ ];
 
3.  It was not the courtroom generally that would traumatize the child, but the
presence of the defendant;
 
4.  The emotional distress which the child would suffer in the presence of the
defendant would be much more than simple nervousness, excitement or
reluctance to testify.
 
          The court found that the Confrontation Clause of the Sixth Amendment to the United
States Constitution would not be violated by the use of remote live video testimony of the
witness, and the procedures used allowed Jodi's testimony to be subjected to full and
rigorous cross-examination in the sight of and in the hearing of the jury. Cunningham and
his attorney were afforded means of communication and consultation.
          Applying the Craig criteria to the case at bar, we hold that Cunningham was not
denied his constitutional rights under the Sixth Amendment. The trial court made specific
findings supported by evidence in the record that the closed-circuit television system was
needed to protect Jodi's welfare and that Jodi would suffer emotional distress (beyond
mere simple nervousness or reluctance to testify caused by the courtroom generally) if she
had to be in Cunningham's presence. Cf. id. at 764. Accordingly, the evidence supports
the trial court's finding that it was necessary for Jodi's testimony to be allowed via closed-circuit television. Her testimony was still subjected to vigorous testing of its reliability
through cross-examination by Cunningham's trial counsel, thus protecting a core right of
the Sixth Amendment.  
          Accordingly, Cunningham's fifth point of error is overruled. 
V. Did the Jury Charge Lower the State's Burden of Proof?
          In his sixth point of error, Cunningham contends the jury charge lowered the State's
burden of proof. Cunningham avers that the charge authorized the jury to convict him "for
showing the cover of a magazine that might contain harmful material to a minor even
though the cover actually displayed was not harmful in and of itself." The State counters
that the jury charge merely tracks the information and complaint, and therefore no error
occurred. 
          Appellate review of an alleged error in the jury charge involves a two-step process. 
Abdnor v. State, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994). First, the court must
determine whether error actually exists in the charge given by the trial court. Id. If the first
question is answered affirmatively, the reviewing court must then determine whether
sufficient harm resulted from the error to require reversal. Id. at 731–32; see also Minor
v. State, 91 S.W.3d 824, 828–29 (Tex. App.—Fort Worth 2002, pet. ref'd) (charge did not
contain error; second step unnecessary).
The standard to determine whether sufficient harm resulted from the
charging error to require reversal depends upon whether appellant objected. 
Where there has been a timely objection made at trial, an appellate court will
search only for "some harm." By contrast, where the error is urged for the
first time on appeal, a reviewing court will search for "egregious harm."
 
Abdnor, 871 S.W.2d at 732 (citing Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim.
App. 1984); Arline v. State, 721 S.W.2d 348, 351 (Tex. Crim. App. 1986)). The "some
harm" standard, as outlined in Arline, requires the defendant to have suffered actual, rather
than merely theoretical, harm. Abdnor, 871 S.W.2d at 732. Nonetheless, the Texas Court
of Criminal Appeals has noted that the presence of any harm, regardless of the degree,
is sufficient to require reversal of the conviction. Id. (referencing Arline, 721 S.W.2d at
351). The burden of proving actual harm (as a consequence of any charge error) rests,
however, with the appellant. Id. If the appellant is unable to persuade the reviewing court
harm exists, "the error will not result in a reversal of his conviction." LaPoint v. State, 750
S.W.2d 180, 191 (Tex. Crim. App. 1986) (op. on reh'g).
          In the case now on appeal, the information alleged Cunningham did then and there
intentionally or knowingly display harmful material, to wit: magazine
containing nude photographs by display of magazine, and the defendant
knew that said material was harmful, and the defendant was reckless about
whether a minor was present who would be offended or alarmed by the
display in that display of magazine to victim, and Jodi . . . an individual who
was then and there younger than 18 [years] of age, was present and
offended or alarmed by the display . . . .
 
(Emphasis added.) The application paragraph of the jury charge authorized the jury to
convict Cunningham if it found:
from the evidence beyond a reasonable doubt that on or about the 19th day
of March, 2001, in Harrison County, Texas, the defendant, Thomas D.
Cunningham, knowing the material is harmful and knowing the person is a
minor, did display harmful material, to-wit: a magazine containing nude
photographs and the defendant was reckless about whether a minor was
present who would be offended or alarmed by the display . . . .
 
(Emphasis added.)
          Cunningham's appellate argument focuses on the possibility that the mere display
of the magazine's cover (which he contends was not itself harmful), without proof he also
displayed the magazine's contents (which were, in fact, never displayed) to Jodi, allowed
the jury to convict Cunningham based on the harmful material inside the magazine rather
than based on the harmful material the State had alleged was on the cover of the
magazine. This, according to Cunningham, lowered the State's burden of proof as
measured by the allegations contained in the State's information and complaint.
          A careful reading of the jury charge shows it authorized a conviction only if the jury
found, beyond a reasonable doubt, Cunningham displayed material harmful to a minor. 
In other words, Cunningham could not be found guilty unless the jury first determined,
beyond a reasonable doubt, that the image seen by Jodi was harmful. (This is because
Jodi testified she only saw the magazine's cover.) While the charge language
subsequently explains the term "harmful material" to mean a magazine containing nude
photographs, we do not believe this to be reversible error. First, the transitive verb
"contain" means "to comprise, include." Webster's New Dictionary 128 (concise ed.
1990). Therefore, the cover is an "included" or "contained" part of the magazine itself. 
Second, the complained-of phrase does not lessen the jury's duty under the charge to
determine whether the picture Jodi saw on the magazine cover was "harmful," as that term
was expressly defined elsewhere in the charge. Nor did the charge lessen the jury's duty
to make such a finding beyond a reasonable doubt. In fact, Cunningham's counsel argued
during summation that the jury could not convict unless it found the cover itself to be
"harmful." Such argument was consistent with the jury charge, as well as the State's
burden of proof (as measured by the complaint and information filed in this case). We
therefore overrule Cunningham's sixth point of error.
VI. Did the Jury Charge Comment on the Weight of the Evidence?
          In his seventh point of error, Cunningham contends the jury charge constituted a
comment on the weight of the evidence because "[e]ven though the charge contained the
correct definition of 'harmful material' under the statute, the charge assumes that the cover
of the magazine itself was harmful if the undisplayed material in the magazine was
harmful." The State counters that the jury charge merely tracks the information and
complaint, and therefore the charge contains no error. 
          "A suggestion in a jury charge that certain evidence is true or untrue is a comment
on the weight of the evidence." Sanders v. State, 69 S.W.3d 690, 694–95 (Tex.
App.—Texarkana 2002, pet. dism'd, untimely filed). A jury charge may not assume any
fact has been proven against a defendant, regardless of the strength of the evidence. 
Marlow v. State, 537 S.W.2d 8, 10–11 (Tex. Crim. App. 1976).
          The language of the jury charge relevant to this point of error tracked the
information, except the charge omitted the repetitive reference that the offense of
displaying harmful material was accomplished "by display of [the] magazine." But despite
Cunningham's claim to the contrary, the charge did not authorize Cunningham's conviction
unless the jury believed Jodi saw harmful material. Jodi testified at trial she saw only the
magazine cover. Accordingly, the jury had to acquit Cunningham unless the jury believed
the cover seen by Jodi was itself "harmful."
          We do not read the charge to instruct the jury that it should presume the magazine
cover to be "harmful" merely based on the magazine's unseen contents.


 Accordingly, we
overrule Cunningham's seventh point of error.
VII. Extraneous Misconduct
          In his final point of error, Cunningham contends he was prejudiced by the trial
court's admission of testimony from Shirley Brooks and from Jodi regarding Cunningham's
extraneous conduct with Christian. Rule 404(b) of the Texas Rules of Evidence prohibits
admission of "[e]vidence of other crimes, wrongs or acts . . . to prove the character of a
person in order to show action in conformity therewith." Tex. R. Evid. 404(b). 
          A. Brooks' Testimony
          Brooks testified Christian was now living with her after he, his sister, and his brother
were removed by Child Protective Services (CPS). Cunningham is not the father of the
children. Cunningham contends this testimony was inadmissible because it suggests he
committed a bad act that prompted CPS to remove the children. Brooks' testimony,
however, did not indicate what, if any, criminal offense or bad act took place. Nor do we
read her testimony to implicate Cunningham in any specific bad act or criminal offense. 
Cf. Schweinle v. State, 893 S.W.2d 708 (Tex. App.—Texarkana 1995), rev'd on other
grounds, 915 S.W.2d 17 (Tex. Crim. App. 1996) (testimony by defendant's former
girlfriend, when she met kidnapping victim, victim appeared to be a "basket case" was not
evidence of extraneous offense committed by defendant). Accordingly, the trial court did
not err by overruling Cunningham's objection to Brooks' testimony.
          B. Jodi's Testimony
          As part of its procedure for allowing Jodi to testify via closed-circuit television, the
trial court provided Cunningham and his counsel with telephones through which they could
communicate during Jodi's testimony. The trial court also made clear to both the State and
Cunningham's counsel they could use the telephone located in the remote witness room
to obtain a ruling on any objections. The trial court further instructed both attorneys that,
whenever it heard one of the attorneys object during Jodi's testimony, the judge would
push a button (presumably on the telephone linking the judge with the remote witness
room) that would allow the judge to talk to the attorneys and provide a ruling on any
evidentiary objections. 
          During her testimony, Jodi told the jury Cunningham "got charged and he went to
jail for dunking [Christian] under the water." This testimony clearly suggests Cunningham
assaulted Jodi's cousin and was arrested for that conduct. The alleged conduct is not
admissible for a noncharacter purpose, and it would have been properly objectionable. 
Cunningham's counsel did not, however, assert a contemporaneous objection during Jodi's
testimony.
          To preserve error, an objection must be "timely, specific, pursued to an adverse
ruling, and, with two exceptions, contemporaneous—that is, made each time inadmissible
evidence is offered . . . ." Geuder v. State, 115 S.W.3d 11, 13 (Tex. Crim. App. 2003)
(discussing one exception, where evidence is heard outside jury's presence to determine
admissibility). The record in this case is clear that Cunningham failed to make a timely,
contemporaneous objection. Given the fact the procedure for obtaining a ruling to an
objection was made clear to counsel before the beginning of Jodi's testimony, we find no
persuasive justification for excusing Cunningham from the general requirement that a
contemporaneous objection must be made at the time of the objectionable testimony. 
Accordingly, Cunningham has not preserved the error for appellate review. We overrule
Cunningham's final point of error.
 

VIII. Conclusion
          For the reasons stated, we affirm the trial court's judgment.
 
                                                                           Donald R. Ross
                                                                           Justice


Date Submitted:      August 25, 2004
Date Decided:         September 17, 2004

Do Not Publish