

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-0634-22

### TAYTON SETH FINLEY, Appellant

### v.

### THE STATE OF TEXAS

### ON DISCRETIONARY REVIEW ON
### THE COURT'S OWN MOTION
### FROM THE SECOND COURT OF APPEALS
### TARRANT COUNTY

HERVEY, J., announced the judgment of the Court and delivered an opinion in which RICHARDSON, NEWELL, and SLAUGHTER, JJ., joined. KEEL, J., concurred. YEARY, J., filed a dissenting opinion. KELLER, P.J., and MCCLURE, J., dissented. WALKER, J., did not participate.

## O P I N I O N

This case involves the Sixth Amendment's Confrontation Clause in the context of the COVID-19 pandemic. Appellant was charged with misdemeanor assault in County Criminal Court. The trial court allowed the complainant, over Appellant's objections, to testify wearing a surgical mask that covered her nose and mouth. Appellant contended his right to confrontation of a witness against him was violated and that the case-specific,

evidence-based findings to show the need for the complainant to wear the mask while testifying were insufficient. The Second Court of Appeals agreed and reversed, holding that the Appellant's Sixth Amendment right was violated and the trial court's findings were insufficient as to why the complainant needed to wear a mask. We granted review on our own motion and affirm the judgment of the court of appeals.

## I. BACKGROUND

Appellant was charged with misdemeanor assault and was tried during the COVID-19 pandemic. A brief timeline regarding the pandemic, guidance, and orders given to the trial court during the case is helpful before analyzing the issues. The following information shows the shifting ground upon which the trial court was forced to stand due to evolving guidance.

- In March of 2020, the Texas Court of Criminal Appeals and the Texas Supreme Court issued the First Emergency Order Regarding the COVID-19 State of Disaster.[1]

- In May of 2021, the Texas Supreme Court issued its Thirty-Eighth Emergency Order Regarding the COVID-19 State of Disaster. This order did not strictly require the wearing of masks. It required the wearing of masks, social distancing, or both. [2]

---

[1] *First Emergency Order Regarding the COVID-19 State of Disaster*, 596 S.W.3d 265 (Tex., Tex. Crim. App. 2020).

[2] *Thirty-Eighth Emergency Order Regarding the COVID-19 State of Disaster*, 629 S.W.3d 900, 901 (Tex. 2021) (stating "minimum standard health protocols . . . will be employed in all courtrooms . . . including masking, social distancing, or both.") This requirement is less strict regarding mask wearing than previous Emergency Orders. *See e.g.*, *Thirty-Sixth Emergency Order Regarding the COVID-19 State of Disaster*, 629 S.W.3d 897, 898 (Tex. 2021) (ordering "compliance with social distancing protocols and face coverings worn over nose and mouth.").

- On July 19, 2021, the Texas Supreme Court issued its Fortieth Emergency Order Regarding the COVID-19 State of Disaster. The order did not refer to masks.[3]

- Appellant's trial began on July 21 and ended on July 26, 2021, in Tarrant County Criminal Court No. 5.[4]

- During Appellant's trial, Tarrant County's COVID-19 operating plan dated June 7, 2021, was in effect. This plan did not refer to masks.

- During Appellant's trial, the trial court did not require people to wear masks.[5]

## A. The Trial Objection

The trial took place during the second year of the COVID-19 pandemic. The stricter approach regarding courtroom procedures had begun to change. However, the pandemic was still alive at the time of the trial. The County Criminal Court was currently not mandating that all persons in the courtroom wear masks. There is no indication in the record that anyone (other than the complainant) wore a mask.[6]

---

[3] Although the Fortieth Emergency Order was issued on July 19, 2021, it did not take effect until August 1, 2021. The Fortieth Emergency Order does not refer to masks, although it still broadly states that trial courts can "take any other reasonable action to avoid exposing court proceedings and participants to the threat of COVID-19." *See Fortieth Emergency Order Regarding COVID-19 State of Disaster*, 629 S.W.3d 911, 912 (Tex. 2021).

[4] Although the Fortieth Emergency Order was issued a couple days prior to the start of trial and received by the trial court, the Thirty-Eighth Emergency Order was in effect during Appellant's case.

[5] The court of appeals noted that during Appellant's trial masks "were voluntary for anyone in the courtroom including witnesses." *Finley v. State*, 655 S.W.3d 504, 506 (Tex. App.—Fort Worth 2022).

[6] Appellant did not object that any other witness testified while wearing a mask during the trial.

The complainant, T.G.,[7] took the stand wearing a surgical mask. Counsel for the Appellant objected under the Confrontation Clause, employing the reasoning in *Crawford*,[8] because the mask would hide facial expressions and facial features which would affect his confrontation on cross examination. *See Crawford v. Washington*, 541 U.S. 36 (2004). Counsel stated he was "more sensitive than a lot of folks"[9] when it came to questioning persons with facial masks. Counsel noted he might need to approach T.G. with documents, but he would not approach her otherwise and suggested an arrangement could be made.

The State was incensed and responded that Appellant's objection was meant only to harass and annoy T.G. The State argued the Texas Supreme Court orders relating to the pandemic are very clear that "we should do as much as possible to protect people during in-person proceedings."[10] And that if T.G. "feels most comfortable testifying with a mask on"[11] in the courtroom during a pandemic, it is within her rights to do so.

---

[7] The court of appeals refers to the complainant by the initials T.G. and we will continue to do so. *See Finley v. State*, 655 S.W.3d 504, 506 n. 1 (Tex. App.—Fort Worth 2022).

[8] Defense counsel stated "Justice Scalia in *Crawford* talked about face-to-face confrontation of the witnesses. . . [t]here's facial expressions, facial features, there's all kinds of things that occur." 5 RR 12.

[9] 5 RR 12.

[10] *Id.*

[11] *Id.*

The trial court stated it did receive the latest Emergency Order but it was not immediately available for review.[12] The trial court agreed with the State about the overall tenor of the Texas Supreme Court orders requiring trial courts to take reasonable measures to mitigate the risk of community exposure to COVID-19. The court stated, "So if [T.G.] wants to wear a mask, I'm not going to tell her she can't,"[13] overruling Appellant's objection and allowing T.G. to testify wearing a mask. Appellant's counsel objected during T.G.'s direct examination that he had trouble hearing her and that her voice was muffled; T.G. moved the microphone closer to her mask to resolve the issue and there were no more objections regarding the mask.

### B.   T.G.'s Testimony

T.G. testified she and Appellant began a casual romantic relationship in early 2015 that quickly escalated to "serious" and that she was pregnant by April. Although T.G. thought the two had a good relationship, she started noticing that Appellant was displaying increasingly erratic and violent behavior. She gave three examples. First, when T.G. tried to throw some papers away, Appellant picked her up and threw her into mirrored closet doors. She fell to the floor and stayed there all night. Second, T.G. and Appellant got into a heated argument while she was six months pregnant. At one point during the argument, Appellant flipped T.G. on her head and neck and held her like that "for what felt like

---

[12] We assume the trial court was referring to the Fortieth Emergency Order which issued just a couple days prior. *Fortieth Emergency Order Regarding COVID-19 State of Disaster*, 629 S.W.3d 911 (Tex. 2021).

[13] 5 RR 13.

hours." After the violent encounter, T.G. drove herself to the hospital because she was bleeding. A sonogram showed that the baby was not moving her arm and leg on one side. T.G. was then referred to a domestic-violence shelter. Third, T.G. testified that she and Appellant were being intimate when he pinched her hard enough to severely bruise her. The next time T.G. saw Appellant was the night of an assault a few months later.

Testifying about the assault in question, T.G. said she and Appellant met up after his evening shift, went to a nearby bar, and drank into the early morning hours. According to T.G., Appellant grew increasingly angry while they were there. When they were walking to his car, T.G. testified that they began arguing and that Appellant started shoving her. T.G. said that Appellant drove erratically all the way to his house and that, when they arrived, she asked him to take her home. In response, Appellant backed the car out of the driveway, unbuckled T.G.'s seatbelt, and slammed on the accelerator. He eventually drove through his fence before abruptly stopping. T.G. believed that Appellant wanted her "to go through the windshield."

T.G. testified Appellant got out, walked over to her side of the car, dragged her out, and started punching her. T.G. remembered Appellant dragging her by her clothes and hair into his house where she collapsed on the bed. A few minutes later, Appellant sexually assaulted T.G. She did not know how long it lasted, but she testified that, at some point, she heard Appellant's mother, who lived nearby, come into the house and ask, "What's going on?" T.G. said that Appellant left the room to talk to his mother, then came back and raped her.

According to T.G., after Appellant raped her, he took her to a gas station where they met his mother. Appellant's mother bought T.G. and Appellant tacos and some gas, and Appellant took T.G. to her car. A few days later, she drove herself to Palo Pinto hospital because the bruises were not healing. T.G. initially told hospital staff that she fell off a horse but later admitted what happened.

### C.   Other Inculpatory Evidence

T.G. was the only eyewitness to the offense. All the other state evidence was based on the police investigation and medical evidence. Three police officers testified. An officer from the Mineral Wells Police Department (MWPD) testified that he made a domestic violence report at the Palo Pinto hospital, and he thought that T.G.'s behavior was consistent with domestic violence victim. A Fort Worth Police Department (FWPD) officer[14] testified that he interviewed T.G. and Appellant's mother. He also testified that he took photos of the fence at Appellant's house and said that his investigation corroborated T.G.'s account of the evening. Another FWPD officer (victim-assistance specialist) testified as an expert about the principles and dynamics of domestic violence.

A nurse who treated T.G. at Palo Pinto hospital did not remember T.G., but she read from contemporaneous medical records from T.G.'s visit. According to those records, T.G. told the nurse: "[A]fter arguing all the way back to the house, [Appellant] hit me, grabbed me by the face and knocked me down . . . . [A]t some time he ripped off my underwear and

---

[14] The domestic-violence report was made to MWPD, but the assault took place in Fort Worth.

he kept beating me until I quit fighting and at some point he had sex with me." The medical records also documented the night Appellant hurt T.G. while they were being intimate.

### D. The Verdict

Initially, the jury was unable to reach a verdict, but after receiving an *Allen* charge, it convicted Appellant. *See Allen v. United States*, 164 U.S. 492, 501 (1896). The jury sentenced Appellant to 300 days' confinement and fined him $4,000.

### II. COURT OF APPEALS

Appellant filed a notice of appeal. The court of appeals issued two opinions: its original opinion and a substitute opinion on rehearing. Both are discussed in turn.

### A. Original Opinion

In its original opinion, the court of appeals *sua sponte* abated the appeal. It explained that, under *Craig v. Maryland*, 497 U.S. 836 (1990), face-to-face confrontation can be dispensed with only if the trial court makes a case-specific, evidence-based finding that doing so furthers an important public policy. Abatement Order, No. 02-21-00112-CR (Tex. App.—Fort Worth July 15, 2022) (per curiam).

In response to the court of appeals' remand order, a supplemental clerk's record was transmitted by the trial court. The record included three documents, none of which informed the issue of whether allowing T.G. to testify while wearing a surgical mask furthered an important public policy. Those documents were (1) a COVID-19 operating plan for the Tarrant County judiciary implemented by the local administrative judge, (2)

an order of assignment showing that Appellant's case had been assigned for all purposes to a retired judge, and (3) a docket sheet.[15]

The court of appeals subsequently reinstated the appeal, reversed Appellant's conviction, and remanded for a new trial. The appellate court was concerned that the trial court failed to make a case-specific, evidence-based finding on whether allowing T.G. to testify wearing a surgical mask furthered an important public policy. The State argued that the trial court did not err for three reasons. First, it argued that *Craig* does not apply in the context of the COVID-19 pandemic. Second, it asserted that, even if *Craig* applies, the trial court's general pronouncement that trial courts shall "do whatever we can to protect each other, the community, from the Covid virus" was a sufficient case-specific, evidence-based finding. Third, the State contended that, aside from *Craig*, the Texas Supreme Court's Fortieth Emergency Order authorized trial courts to dispense with face-to-face confrontation based on language in the order directing courts to "take any other reasonable action to avoid exposing court proceedings and participants to the threat of COVID-19." *Fortieth Emergency Order*, 629 S.W.3d 911, 912 (Tex. 2021).

The court of appeals held that T.G.'s surgical mask was a denial of face-to-face confrontation and that *Craig* applied. It declined to hold that there is a "general-pandemic" exception to the right to confrontation. It reached this conclusion based on our decision in

---

[15] The docket sheet was already in the original clerk's record. *Finley v. State*, No. 02-21-00112-CR, 2022 WL 4373606, at *3 (Tex. App.—Fort Worth Sept. 22, 2022), *reh'g granted*, 364 S.W.3d 908 (Tex. App.—Fort Worth 2022).

*Haggard v. State* reaffirming that *Craig* applies when face-to-face confrontation is dispensed with, and found a lack of authority to support the State's "general-pandemic" argument. The court of appeals further held that the trial court's finding did not satisfy *Craig* despite its general pronouncement about the COVID-19 pandemic. According to the court of appeals, the crux of the problem was that the trial court made no finding explaining why T.G.—in this trial—needed to wear a mask while testifying.

The court of appeals also disagreed that the Texas Supreme Court's Emergency Order permitted trial courts to dispense with physical, face-to-face confrontation. It cited three reasons. First and foremost, by its own language, the order is subject to constitutional limitations. Second, in previous orders, trial courts could require people in courtrooms to wear masks covering their nose and mouth, but the Texas Supreme Court removed that language in subsequent orders. Third, the court of appeals observed that, even if the trial court still had the authority to require people in courtrooms to wear masks, the trial court did not properly exercise that authority here.

After finding error, the court of appeals held that Appellant had been harmed. It observed that T.G. was the State's star witness because she was the only person to give a first-hand account of events for the State, and it pointed to the jury's initial inability, even with T.G.'s testimony, to reach a unanimous verdict.

### B.   Substitute Opinion on Rehearing

The same day the court of appeals handed down its decision, it received a second supplemental clerk's record. That record included two items: (1) a transcript from an

abatement hearing,[16] and (2) thirty-six oral findings made by the trial court that had been reduced to writing. The State argued in a motion for rehearing that the court of appeals should consider the new record, and the court of appeals agreed. Nonetheless, again it held that there was no case-specific, evidence-based finding that permitted the trial court to deny Appellant his Sixth Amendment right to confront his accusers face to face. *Finley v. State*, 655 S.W.3d 504, 508–15 (Tex. App.—Fort Worth 2022) (op. on reh'g); *see* TEX. R. APP. P. 44.2(a).

The court of appeals explained that the trial court's findings could be divided into four categories, and it discarded three as irrelevant.[17] It discussed only the fourth category, which dealt with T.G.'s testimony. Specifically, the court of appeals relied on the following findings by the trial court in its analysis:

> (5) If the <u>*Craig*</u> requirements apply, the court finds there was an important public policy of protecting the participants in the trial, as well as the public, for the following reasons:
>
> > a. at the time of the trial there was a deadly global pandemic caused by a contagious virus; and
> >
> > b. most, if not all, of the Emergency Orders of the Supreme Court of Texas, the Office of Court Administration's various Guidance and Best Practices documents, the various Declarations of Disaster and the Executive Orders from the

---

[16] The abatement hearing was held two days before the first supplemental clerk's record was filed in the court of appeals.

[17] The three irrelevant categories were "general pronouncements about COVID-19 pandemic and the court's duty to protect the participants from infection," "facts related to the trial court's management of the courtroom and trial proceedings," and "conclusions of law related to whether [Appellant]'s Confrontation right was improperly infringed." *Finley v. State*, 655 S.W.3d 504, 513 (Tex. App.—Fort Worth 2022) (op. on reh'g).

Governor of the State of Texas, the various Declarations of Local Disaster due to Public Health Emergency issued by the Tarrant County Judge and County Commissioners, the Tarrant County Health and Safety Policy established by the Tarrant County Commissioners Court, and the Local Operating Plans established by the Tarrant County judiciary (to all of which the court takes judicial notice) dealt with matters of safety for court participants and the public during said pandemic."

(12) The court finds the witness was employed in a health-care facility and makes a reasonable deduction from that fact that the witness had more specialized knowledge of the importance of and the need to wear a surgical-type mask to avoid exposure to and spreading of the Covid-19 virus.

(32) The court finds the witness meets the definition of "victim" as set forth in Article 56A.001(7), Texas Code of Criminal Procedure.

(33) The court finds the witness has the right to be treated with fairness pursuant to Article 1, Section 30(a) of the Constitution of the State of Texas.

(34) The court finds that, given the totality of the circumstances, allowing the witness to wear a surgical-type mask as she desired while testifying in a public trial during a time of disaster declarations, declarations of public health disaster, and emergency orders issued in response to the deadly global pandemic caused by a contagious virus, was treating her with fairness as required by Article 1, Section 30(a) of the Constitution of the State of Texas while balancing Defendant's right to confront the witness against him, with little or no restriction and no harm to Defendant. The court finds both Defendant and the witness were afforded the ability to, and did, exercise constitutional rights guaranteed to them.

The court of appeals noted trial court findings that T.G. might have had more specialized knowledge than the average person about the importance of wearing a surgical type mask because she was employed at a health-care facility (#12) and that, because T.G.'s was a crime victim under Article I, Section 30(a) of the Texas Constitution, she was entitled

to be treated fairly, and fair treatment included allowing her to testify wearing a mask (#34).[18] It found neither satisfied *Craig*.

The court of appeals reasoned that, even if T.G. had specialized knowledge about the need to wear a mask to prevent the spread of COVID-19 (which the trial court did not learn about until later), the finding did not explain T.G.'s need to wear a mask while testifying. It further reasoned that, like the "specialized knowledge" finding, even if T.G. was a victim of crime for purposes of Article I, Section 30(a), the finding did not explain *why T.G. needed* to testify wearing a mask. The court of appeals' harm analysis was substantially the same as on original submission.

### C. Discretionary Review

We granted review of the court of appeals' decision on our own motion and asked the parties to brief the following questions:

(1) If a witness testifies at a criminal trial while wearing a surgical mask that covers the witness's nose and mouth, is a defendant's Sixth Amendment right to face-to-face confrontation denied?

(2) Is there a general exception during a global pandemic to the Sixth Amendment Confrontation Clause and in-person confrontation?

(3) If there is a global pandemic exception, at what point does a global pandemic begin, and at what point does a global pandemic end?

(4) If particularized findings are necessary, were the findings in this case sufficient to dispense with face-to-face confrontation because doing so was necessary to further an important public policy, and the reliability of the testimony was otherwise assured?

---

[18] Article I, Section 30 states in relevant part that a crime victim has "the right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process . . . ." TEX. CONST. art. I, § 30(a)(1).

The State and Appellant both agree there is no general, global-pandemic exception to the Sixth Amendment's right to face-to-face confrontation. The State asserts there was no denial of face-to-face confrontation in Appellant's case. The State concedes that wearing a mask covering the mouth and nose might impact the ability to observe the witness and his or her demeanor, but the effect is so minimal as to not cause a deprivation of the Sixth Amendment right. In support, the State cites a federal district court case[19] and other state cases.[20] The State still argues that, even if *Craig* applies, the trial court made implied findings that satisfied the case-specific, evidence-based requirement. *See Lively v. State*, 968, S.W.2d 363, 367 (Tex. Crim. App. 1998) (finding that "nothing in *Maryland v. Craig* requires that a trial court make explicit, as opposed to implicit, findings"). Those findings are the trial judge's general pronouncement about the state of the world during the COVID-19 pandemic and the Emergency Order authorizing trial courts to take reasonable measures.

---

[19] *United States v. Crittenden*, No. 4:20-CR-7 (CDL), 2020 WL 4917733 at *20 (M.D. Ga. Aug. 21, 2020) (finding "being able to see a witness's nose and mouth is not essential to the reliability of the testimony);

[20] *See e.g.*, *United States v. James*, No. CR-19-08019-001-PCT-DLR, 2020 WL 6081501 at *5 (D. Ariz. Oct. 15, 2020) (stating the "Court finds the rationale in *Crittenden* persuasive in concluding that being able to see a witness's nose and mouth is not essential to test the reliability of the testimony"); *State v. Cuenca*, 524 P.3d 882, 888 (Idaho 2023) (finding that wearing surgical masks did not reduce the reliability of the testimony, citing *Crittenden*); *State v. Modtland*, 970 N.W.2d 711, 720 (Minn. Ct. App. 2022) (finding that wearing surgical masks did not reduce the reliability of the testimony, citing *Crittenden*); *People v. Lopez*, 75 Cal. App. 227, 234 (2022) (finding that wearing surgical masks did not reduce the reliability of the testimony, citing *Crittenden*).

Appellant argues that he was denied face-to-face confrontation. He cites this Court's decision in *Romero* stating that the face "is the most expressive part of the body and something that is traditionally regarded as one of the most important factors in assessing credibility," and he points out that the mask in this case completely covered T.G.'s mouth and nose. *Romero v. State*, 173 S.W.3d 502, 505–06 (Tex. Crim. App. 2005). Appellant argues *Craig* applies, and therefore, the trial court must make a case-specific, evidence-based necessity finding. *Finley v. State*, 655 S.W.3d 504, 513 (Tex. App.—Fort Worth 2022, pet. filed) (quoting *Romero v. State*, 136 S.W.3d 680, 690-691 (Tex. App.—Texarkana 2004), *aff'd* 173 S.W.3d 502 (Tex. Crim. App. 2005)). Finally, Appellant contends that the findings here are insufficient because a mere allegation that public policy would be served is inadequate under *Craig*. There must be a finding as to why T.G. needed to wear a mask to serve a public-policy interest.

### III. CONFRONTATION CLAUSE

### A. Applicable Law

"In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him[.]" U.S. CONST. amend. VI. The right to confront adverse witnesses face-to-face is essential to a fair trial in a criminal prosecution, and the concept has a long lineage in our legal culture. *Coy v. Iowa*, 487 U.S. 1012, 1014-17 (1988). "The central concern of the *Confrontation Clause* is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *Maryland v. Craig*, 497 U.S. 836, 845

(1990).[21] The Sixth Amendment reflects a strong preference for face-to-face confrontation that cannot be easily dispensed with, but the right is not absolute. *Maryland v. Craig*, 497 U.S. 836, 850 (1990).

Denial of face-to-face confrontation will not violate the *Confrontation Clause* if dispensing with it "further[s] an important public interest[,] . . . and when the reliability of the testimony is otherwise assured." *Romero v. State*, 173 S.W.3d 502, 505 (Tex. Crim. App. 2005) (citing *Maryland v. Craig*, 497 U.S. 836, 850 (1990)); *See also Haggard v. State*, 612 S.W.3d 318, 325 (Tex. Crim. App. 2020). "Whether the reliability of the testimony is otherwise assured turns upon the extent to which the proceedings respect the four elements of confrontation: physical presence, oath, cross-examination, and observation of demeanor by the trier of fact." *Maryland v. Craig*, 497 U.S. 836, 846 (1990).

Two notable cases regarding obstructed viewing of witnesses are relevant to the analysis in this case. First, in *Coy*, the issue for the Supreme Court was whether allowing two child victims of sexual abuse to testify with a screen between them and the accused

---

[21] This Court is aware of the icy relationship between *Maryland v. Craig* 497 U.S. 836 (1990) and the later decided *Crawford v. Washington*, 541 U.S. 36 (2004). *See, e.g.*, *Haggard v. State*, 612 S.W.3d 318, 326–27 (Tex. Crim. App. 2020) (noting that some have argued *Crawford* implicitly overruled *Craig*, in particular, the reliability prong); *See also Coronado v. State*, 351 S.W.3d 315, 321 (Tex. Crim. App. 2011) (discussing how *Crawford* may have changed the landscape for *Confrontation Clause* cases).

The United States Supreme Court has not shed light on whether *Crawford* implicitly overruled *Craig*, or whether the two cases coexist in that *Craig* applies to in-person testimony and *Crawford* applies to out-of-court testimonial statements. However, this Court has continued to use *Craig* as precedent when confronting *Confrontation Clause* cases regarding in-person testimony and will continue to do so in this case. *See e.g.*, *McCumber v. State*, 690 S.W.3d 686 (Tex. Crim. App. 2024) (not designated for publication).

was constitutional. *Coy v. Ohio*, 487 U.S. 1012 (1988). The Court stated this procedure allowed the accused only "dimly to perceive the witnesses, but the witnesses to see him not at all." *Id*. at 1015. The Court found it "difficult to imagine a more obvious or damaging violation of the defendant's right to face-to-face encounter." *Id*. at 1020. Second, in *Romero*, this Court dealt with whether it was constitutional to allow a witness to testify wearing "dark sunglasses, a baseball cap pulled down over his forehead, and a long-sleeved jacket with its collar turned up and fastened so as to obscure [the witness's] mouth, jaw, and the lower half of his nose." *Romero v. State*, 173 S.W.3d 502, 503 (Tex. Crim. App. 2005). This Court stated the witness believed the disguise "would confer a degree of anonymity that would insulate him from the defendant." *Id*. at 505. In addition, the observation of demeanor by the trier of fact was impacted as "the trier of fact was deprived of the ability to observe his eyes and his *facial expressions*." *Id*. (emphasis added). Both cases were found to violate the right to face-to-face confrontation with an accusatory witness.

If the *Confrontation Clause* is implicated, there must be individualized findings by the trial court regarding the witness in question as to why the special procedure was necessary. *Haggard v. State*, 612 S.W.3d 318, 324 (Tex. Crim. App. 2020) (citing *Coy v. Iowa*, 487 U.S. 1012, 1021 (1988)). "The requisite finding of necessity must of course be a case-specific one: The trial court must hear evidence and determine whether use of [the special procedure] . . . is necessary [for] the particular [witness] who seeks to testify." *Haggard v. State*, 612 S.W.3d 318, 325 (Tex. Crim. App. 2020) (citing *Maryland v. Craig*, 497 U.S. 836, 855. (1990)). The finding cannot be generalized towards a specific group of

individuals, but rather why the individual witness's testimony will further an important public policy. *See Haggard v. State*, 612 S.W.3d 318, 325 (Tex. Crim. App. 2020) (citing *Maryland v. Craig*, 497 U.S. 836, 855. (1990)); *Coy v. Ohio*, 487 U.S. 1012, 1021 (1988). This dictates to a required "necessity" finding.[22]

## B. Analysis

### Pandemic Exception

Both the State and Appellant agree there is no general, pandemic-exception to the *Confrontation Clause* and we agree. The text of the Sixth Amendment is clear that the right of the accused to confront witnesses applies to "all" criminal prosecutions. U.S. Const. amend VI. The dispensation of face-to-face confrontation has been best addressed by the United States Supreme Court in its *Craig* line of cases. The United States Supreme Court has never suggested another exception to the face-to-face confrontation guarantee. There is no general exception to this right during other global events such as wars and natural disasters. We believe our founders would not so generally dispense with the very rights— which are divine in nature—in which they risked everything to enshrine. Accordingly, we overrule our second and third grounds for review.

### Face-to-Face Confrontation

---

[22] The trial court made multiple findings even though *Craig* talks about a necessity finding in the singular. Trial courts will almost always have to make multiple subsidiary findings to support its ultimate finding that dispensing with face-to-face confrontation is necessary.

We find the *Confrontation Clause* is invoked under the current facts and that *Craig* applies. T.G.'s wearing of a surgical mask that covered her nose and mouth from the accused and the trier of fact. This denies confrontation and affects the elements of "presence" and the ability of the jury to observe the demeanor of T.G.[23] The two elements were not completely denied. There is no dispute that T.G. testified under oath or that Appellant was able to question her on cross-examination to his satisfaction. However, the combined effect of wearing the surgical mask upon both "presence" and "observation" implicates the Sixth Amendment. We find Appellant's Sixth Amendment right to face-to-face confrontation was ultimately denied.

Both Appellant and the trier of fact were unable to observe a substantial portion of T.G.'s face, which we have said "is the most expressive part of the body and something that is traditionally regarded as one of the most important factors in assessing credibility." *Romero v. State*, 173 S.W.3d 505, 506 (Tex. Crim. App. 2005). Our comment about a person's face and its importance is no less true today than it was in 2005 when *Romero* was decided. We would not hold that a witness can never testify wearing a surgical mask because of the *Confrontation Clause*. Rather, I would hold that, in this case, the trial court's findings are insufficient to support its dispensation of Appellant's right to confrontation. It is not an unqualified constitutional right, but only the weightiest of considerations should allow it to be denied.

---

[23] There is no dispute that T.G. testified under oath or that Appellant was able to question her on cross-examination to his satisfaction.

The State argues that T.G. wearing a surgical mask does not affect the presence element and may only potentially effect the observation of demeanor by the trier of fact element. The State relies heavily on a federal district court's unpublished opinion in *United States v. Crittenden*, and other state court cases that rely on the same logic (which also cite to *Crittenden*). *United States v. Crittenden*, No. 4:20-CR-7 (CDL), 2020 WL 4917733 (M.D. Ga. Aug. 21, 2020); *See also Supra* n. 19. The *Crittenden* court stated the following regarding the "presence" element:

> The only thing that will stand in the way of the Defendant and his accusers is *a tiny piece of cloth covering only each witness's nose and mouth*. Therefore, *the masks will in no way prohibit* the Defendant and witnesses from directly looking upon each other in person during the testimony while in the presence of the jury. *There is no reason to believe that it is any less difficult to tell a lie to a person's face just because the liar's nose and mouth are covered*.

> *Id*. at \*19 (emphasis added).

The surgical mask is not a tiny piece of string; it covers the entirety of the nose and mouth. There may be tiny pieces of string which extend over the cheeks of the face and attach behind the ear, unless it is somehow attached to her face. It is, in fact, a partial partition which disguises that area. A surgical mask is not intended to be a disguise, but surgical masks along with bandanas to cover the nose and mouth area are routinely used in criminal activity to hide the appearance of the wearer. And the mouth is one of the primary means of communication as it is from which sound is projected and which exhibits complex non-verbal communication such as smiling, frowning, lip quivering, etc.

We do agree that the effect on the "presence" element by wearing a surgical mask is not as strong as a full disguise or full partition. T.G. was physically present in the courtroom. She was forced to look upon the Appellant, or awkwardly look away. But to go so far as declaring the effect non-existent is too far. The Court in *Romero* stated "a disguise would confer a degree of anonymity that would insulate him from the defendant[,] . . . accountability was compromised because the witness was permitted to hide behind his disguise[,] . . . and to hold otherwise is to remove the 'face' from 'face-to-face confrontation.'" *Romero v. State*, 173 S.W.3d 502, 505–06 (Tex. Crim. App. 2005). The surgical mask does not remove the entire face from face-to-face confrontation but it removes a significant part of the face. And as in *Romero*, the surgical mask provides some insulation to the witness from the view of onlookers.

The State argues the observation of demeanor element may or may not be compromised. We find that the element is significantly compromised. The State again relies on the unpublished opinion in *Crittenden*:

> Of course, the masks will eliminate two aspects of demeanor for the jury to consider: movement of the mouth and nose. . . . Just as *appropriate clothing* will cover other parts of witnesses' bodies and potentially cover certain muscle twitches in those areas, the jury will not be able to see the masked witness's entire facial expressions. The masks, however, will not prevent observation of other aspects of their body language.
>
> *United States v. Crittenden*, No. 4:20-CR-7 (CDL), 2020 WL 4917733 (M.D. Ga. Aug. 21, 2020) at *19 (emphasis added).

The *Crittenden* court's reasoning, and that of the State, is flawed for similar reasons already stated in discussing the presence element. And as with the presence element, the

surgical mask does not affect the observation element as strongly as a full partition or full disguise. However, there is an effect. Observation of demeanor by the trier of fact is significantly affected by masking the nose and mouth because, as stated in *Romero*, the face is "one of the most important factors in assessing credibility." *Romero v. State*, 173 S.W.3d 505, 506 (Tex. Crim. App. 2005). We will not enter into an infinite digression discussing whether make-up, earrings, or turtlenecks constitute a disguise or partition. But the lack of this expressive area of the face cannot be ameliorated by stating the trier of fact can observe body language. That type of analysis creeps into taking the "face" out of face-to-face confrontation.

We would hold that if you partition off a significant portion of your expressive face—the nose and mouth—and there is an objection under the *Confrontation Clause*, there must be a reason given why it is necessary for that witness to do so to support a sufficient governmental interest. To hold otherwise would lead to absurd results with witnesses wearing surgical masks (and potentially balaclavas[24]) while testifying without any cause to do so or need for a party to justify it.

---

[24] The *Crittenden* court cites a California appellate case where a witness was allowed to wear a hijab while testifying. *United States v. Crittenden*, No. 4:20-CR-7 (CDL), 2020 WL 4917733 at *18 (M.D. Ga. Aug. 21, 2020) (citing *People v. Ketchens*, No. B282486, 2019 Cal. App. *Unpub*. LEXIS 3920, 2019, at *9 (Cal. Ct. App. June 7, 2019) ("finding a jury could adequately observe the demeanor of a witness who testified wearing a hijab when the hijab was tight around her mouth and ultimately did not prevent the jurors from seeing her nose and eyes)).
But the *Crittenden* Court leaves out that there was a balancing test performed for religious reasons in that case. *See People v. Ketchens,* No. B282486, 2019 Cal. App. *Unpub.* LEXIS 3920, 2019, at *14 (Cal. Ct. App. June 7, 2019) ("The court finds that on balance, recognizing the important interests in this case as discussed is the religious protection and freedom of the witness in this case. I have no reason to inquire further or allow further inquiry when she states that her appearance in court today is because of a religious reason").

## Necessity Findings

Even if we assume the reliability of T.G.'s testimony, we are not satisfied that the necessity findings were sufficient. The State argues that, even if *Craig* applies, the trial court made implied findings that satisfied the case-specific, evidence-based requirement. Those findings are based on the trial judge's general pronouncement about the state of the world during the COVID-19 pandemic and the Emergency Order authorizing trial courts to take reasonable measures to ensure the safety and containment of COVID-19. We disagree that the findings were constitutionally sufficient.

Even though the applicable Emergency Order is evidence, it is insufficient to support dispensing with face-to-face confrontation. First, the Order expressly states that it is subject to constitutional limitations—precisely the issue we are faced with. Second, even though earlier emergency orders required people to wear masks, the one applicable at the time of Appellant's trial did not require masks. And while it is true that the trial court made a general pronouncement about the dangers of spreading COVID-19, which seemed to indicate that it believed that it was an important public policy to prevent the spread of COVID-19, it is not clear on what evidence it based its conclusion.[25] The trial court's

---

[25] At the abatement hearing, the trial court took judicial notice of a number of documents, including a Power Point presentation authored by Tarrant County Public Health Department. However, it does not appear that the trial court considered those documents when making its ruling dispensing with Appellant's right to face-to-face confrontation and considered them only after the fact. For example, when discussing the Power Point presentation, which included statistics about COVID-19, the trial court stated that he did not know the numbers but that "they were out there, easily attainable for anybody to see." Of course, the issue is not whether relevant data exists somewhere—it is on what evidence the trial court based its ruling.

additional findings regarding T.G.'s medical knowledge having a bearing on the trial court's decision has no weight. We find this analysis to be *ex post facto* and irrelevant. There is nothing in the record indicating anyone other than T.G. wore a mask during these proceedings. Although much of the discussion in this case turns on whether preventing the spread of COVID-19 is an important public policy and generally whether masks furthered that asserted public policy, the trial court's findings were insufficient.

The State asserts the findings were sufficient because of the universal nature of the COVID-19 pandemic. It directs our attention to the Idaho Supreme Court case of *State v. Cuenca*. *State v. Cuenca*, 524 P.3d 882 (Idaho 2023). In *Cuenca*, a similar situation existed in that the trial court had received emergency orders as well. The Idaho Supreme Court stated that "[t]he district court's reliance on that standing order was enough to constitute a case-specific finding of necessity as to each particular witness who testified at Cuenca's trial because the relevant public interest—in context of the COVID-19 pandemic—was uniquely particular and common to everyone present in the courtroom at Cuenca's trial." *State v. Cuenca*, 524 P.3d 882, 888 (Idaho 2023). But there is an important difference in the present case. In *Cuenca*, there was a mask order that all personnel in the courtroom wear masks. In the present case, the use of masks was discretionary.

The State relies on this logic, that the government interest to preserve health and stop the transmission of COVID-19 was the same for everyone. Further, they argue that the trial court did not have to explicitly state so because it was naturally implied. However, this logic does not translate properly in the present case. The findings required are about "necessity." If wearing surgical masks to protect public health or reduce transmission of

COVID-19 was necessary because the ruling applied to everyone, then wearing them would not be optional as they were in Appellant's trial. If, on the other hand, T.G. was different than everyone else in the courtroom, then the trial court must make a finding as to why T.G.—specifically—needed to wear a mask.

This was not done. The need for specific reasons why the witness in question needs a special procedure predates *Craig* to the jurisprudence in *Coy*. The Court in *Coy* stated "[s]ince there have been no individualized findings that these particular witnesses needed special protection, the judgment here could not be sustained by any conceivable exception." *Coy v. Iowa*, 487 U.S. 1012, 1021 (1988). And now there must be a reason why the particular witness needs a special procedure and the need must be more than of a *de minimis* nature. *Maryland v. Craig*, 497 U.S. 836, 855–56 (1990). Here, the trial court stated that if T.G. felt more comfortable wearing a surgical mask it would not ask her to remove it. This is an individualized finding. No other reason was given, other than comfort, as to why T.G. needed to wear a surgical mask.

Precedent on this issue does not support comfort as a valid reason to deny the accused the right to face-to-face confrontation with the accuser. In *Coy*, the Court stated that "face-to-face presence may, unfortunately, upset the truthful rape victim or abused child[.]" *Coy v. Iowa*, 487 U.S. 1012, 1020 (1988). And this Court stated in *Haggard* that "the [United States Supreme Court] acknowledged that the physical and psychological well-being of the child [testifying] might not always be sufficient to outweigh a defendant's right to physical, face-to-face confrontation." *Haggard v. State*, 612 S.W.3d 318, 325 (Tex. Crim. App. 2020) (citing *Maryland v. Craig*, 497 U.S. 836, 852 (1990)). A finding that a

witness was more comfortable wearing a mask as a sufficient cause is not evident from the case law and such a finding would be open to abuse. Accordingly, we find the required necessity findings for why T.G. needed to wear a surgical mask are absent, resulting in a violation of Appellant's constitutional right to face his accuser.

## IV. HARM

### A. Applicable Law

When there is a denial of physical, face-to-face confrontation, we must review whether the denial was harmful. *Haggard v. State*, 612 S.W.3d 318, 328 (Tex. Crim. App. 2020). Constitutional error is harmful unless we determine beyond a reasonable doubt that the error did not contribute to the conviction. *Id*. (citing Tex. R. App. P. 44.2(a)). "The State has the burden, as beneficiary of the error, to prove that the error is harmless beyond a reasonable doubt." *Id*. (citing *Deck v. Missouri*, 544 U.S. 622, 635 (2005) (quoting *Chapman v. California*, 386 U.S. 18, 23 (1967)). In the context of the denial of physical confrontation, the harm analysis cannot include consideration of whether the witness's testimony would have been unchanged, or the jury's assessment unaltered, had there been confrontation because such an inquiry would obviously involve pure speculation. Instead, harm must be determined based on the remaining evidence. *Haggard*, 612 S.W.3d at 328.

The Supreme Court held that a *Confrontation Clause* harm analysis begins with the presumption that the damaging potential of the cross-examination was fully realized. *Haggard*, 612 S.W.3d at 329 (relying on *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986). Then, it gave five factors to consider: (1) the importance of the witness' testimony in the prosecution's case, (2) whether the testimony was cumulative, (3) the presence or

absence of evidence corroborating or contradicting the testimony of the witness on material points, (4) the extent of cross-examination otherwise permitted, and (5) the overall strength of the prosecution's case. *Id*.

## B.    Analysis

Because we find error in allowing T.G. to testify while wearing a mask, we must set aside her testimony to determine beyond a reasonable doubt that the error did not contribute to the conviction. The remaining evidence consisted of: (1) the secondary nurse's testimony concerning T.G.'s injuries, which relied heavily on medical records; (2) testimony from a Mineral Wells officer who met T.G. at the hospital, got her statement, characterized her injuries as consistent with assault, and described her as "anxious" and "concerned"; (3) testimony from a Fort Worth officer who followed up on T.G.'s statement, made calls to involved parties, and found that the driveway appeared "chewed up"; (4) T.G.'s medical records from two different hospital visits and photos of her injuries; and (5) expert testimony from a victim specialist that domestic violence victims struggle with power dynamics within their relationships which make them reluctant to report abuse and struggle with remembering details involving their trauma.

T.G. was both the purported victim and the sole witness to the alleged assault. Excluding her testimony leaves a large hole in the State's case which the remaining evidence simply cannot fill to a point where we can conclude beyond a reasonable doubt that the trial court's error did not contribute to the conviction. The fact that the jury was initially unable to reach a unanimous decision and returned a guilty verdict only after receiving an *Allen* charge demonstrates the tenuity of their decision. Accordingly, we hold

the State failed to meet its burden to establish the remaining evidence showed the error was harmless beyond a reasonable doubt.

## V.   CONCLUSION

We affirm the judgment of the court of appeals.

Delivered: November 27, 2024

Publish